IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                                               Crim. No. 19-1610 MV-4

KARL THOMPSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the following Motions *in Limine* by the United States and Defendant Karl Thompson: (1) United States' Opposed Motion *in Limine* to Prohibit Discussion of Sentencing or Punishment at Trial [Doc. 191] ("Sentencing MIL"); (2) Defendant's Unopposed Motion *in Limine* to Exclude Hearsay [Doc. 221] ("Hearsay MIL"); (3) Defendant's Unopposed Motion *in Limine* to Exclude Testimony of Bruce Wilson [Doc. 224] ("Bruce Wilson MIL"); and (4) Defendant's Unopposed Motion *in Limine* to Allow Jurors During Voir Dire and Witnesses While They Testify to Remove Face Masks [Doc. 227] ("Face Mask MIL"). Mr. Thompson responded in opposition to the Sentencing MIL [Doc. 213] and the government filed a Reply [Doc. 233]. The government filed a Notice of Position in response to the Hearsay MIL, Bruce Wilson MIL, and Face Mask MIL [Doc. 248] stating that it did not object to the relief sought in these motions. Having carefully considered the Motions, relevant law, and being otherwise fully informed, the Court will **GRANT** the Sentencing MIL, **GRANT** the Hearsay MIL, **GRANT** the Bruce Wilson MIL, and **GRANT IN PART** the Face Mask MIL.

## BACKGROUND

On April 18, 2019, four individuals allegedly robbed a Mustang convenience store of liquor

1

items.  Doc. 221 at 1.  On June 12, 2019, a federal grand jury returned an indictment charging Karl Thompson and three others with one count of Interference with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. §§ 1951(a) and 2, and one count of Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and 2.  Doc. 13.  Mr. Thompson's codefendants are Julian C. Silversmith, Aurelius Jamal Eddie, and Kevin Marquez.  *Id.*

In December 2019, Mr. Thompson pled guilty to an information [Doc. 82] charging him with one count of Interference with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. §§ 1951(a) and 2, and one count of Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  Doc. 85.  However, on March 10, 2021, this Court rejected the plea agreement and Mr. Thompson elected to withdraw his guilty plea and proceed to trial.  Doc. 173.  On April 22, 2021, a federal grand jury returned a superseding indictment charging Mr. Thompson with the same offenses as the first indictment and an additional charge of Conspiracy to Interfere with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. § 1951(a).  Doc. 196.  In April 2021, the parties began filing a series of motions *in limine* to address certain issues prior to trial.

## DISCUSSION

### I. The Sentencing Motion *in Limine*

The United States' Sentencing MIL requests that the Court exclude evidence related to the sentence that might be imposed if Mr. Thompson is convicted of the offenses charged.  Doc. 191 at 1.  The government notes that the Tenth Circuit has developed a bright line rule that "[u]nless a statute specifically requires jury participation in determining punishment, the jury shall not be

informed of the possible penalties." *Id.* at 2 (citing *United States v. Parrish*, 925 F.2d 1293, 1299 (10th Cir. 1991), abrogated on other grounds by *United States v. Wacker*, 72 F.3d 1453 (10th Cir. 1995)).  The government argues that allowing discussion of possible penalties would contradict the jury instructions regularly given by this Court. *Id*. at 3-4 (citing Tenth Circuit Pattern Jury Instructions 1.04 at 9 ("It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy.") and 1.20 at 34 ("If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.")).  Because the Supreme Court has held that "[t]he jury has no sentencing function and should reach its verdict without regard to what sentence might be imposed," the government asserts that the parties should be precluded from making references to potential sentences.  *Id.* (citing *Rogers v. United States*, 422 U.S. 35, 40 (1975)).

In response, Mr. Thompson recognizes that the Tenth Circuit and Supreme Court precedent prevents introduction of evidence of the potential penalties that he faces if convicted.  Doc. 213 at 2.  He notes, however, that the Supreme Court's recent Sixth Amendment jurisprudence requires that this precedent be reevaluated.  *Id.*  He argues that when the Sixth Amendment was drafted, it contemplated that juries would consider punitive consequences in reaching their verdict, and that recent decisions "cast considerable doubt on the prohibition of the disclosure of possible penalties evidence to the jury." *Id.* at 3-4.  Mr. Thompson requests that the Court reconsider the prohibition on the presentation of possible penalties and allow such evidence to be presented to the jury.  *Id.* at 8.  This theoretical argument clearly contravenes existing—and controlling—precedent, however,  and thus is unpersuasive.

Not only is the presentation of evidence of possible sentences to a jury prejudicial, but the Tenth Circuit has mandated that a jury is obligated to "reach its verdict without regard to what

sentence might be imposed." *United States v. Greer*, 620 F.2d 1383, 1384–85 (10th Cir. 1980) (citing *Rogers*, 422 U.S. at 40). Unless there is an explicit statutory requirement that the jury participate in the sentencing decision, "nothing is left 'for jury determination beyond the guilt or innocence of an accused.'" *Id*. (quoting *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971)); see also *Parrish*, 925 F.2d at 1299 ("Unless a statute specifically requires jury participation in determining punishment, the jury shall not be informed of the possible penalties."). Accordingly, the Tenth Circuit has specifically held that "it is improper to inform the jury of the defendant's possible punishment." *United States v. Jones*, 933 F.2d 807, 811 (10th Cir. 1991). Furthermore, the Tenth Circuit has made clear that "there is no right to jury nullification." *Crease v. McKune*, 189 F.3d 1188 (10th Cir. 1999) (citation omitted). Consistent with this case law, Tenth Circuit Criminal Pattern Jury Instructions 1.04 and 1.20 direct that the jury's verdict should be based "solely upon the evidence, without prejudice or sympathy," and that the jury should not discuss or consider the possible punishment when deciding the verdict. Tenth Cir. Crim. Pattern Jury Instr. 1.04 at 9, 1.20 at 34 (2021 update). Given this controlling authority, the Court is not at liberty to adopt Mr. Thompson's theory that an originalist approach to the Sixth Amendment would establish a right to instruct the jury about possible penalties. Accordingly, the United States' Sentencing MIL will be granted.

   **II. The Hearsay Motion *in Limine***

Mr. Thompson's Hearsay MIL asks the Court to exclude the introduction of hearsay statements and irrelevant evidence. Doc. 221. Specifically, as officers investigated the April 18, 2019 robbery of the Mustang convenience store, they interviewed several individuals and gathered information. *Id.* at 2. Additionally, during a jailhouse interview, an individual named Bruce Wilson told officers about statements made by Mr. Thompson's codefendants (specifically, Mr.

4

Silversmith and Mr. Eddie) after the robbery. *Id.* On April 24, 2019, officers received a crime stopper tip reporting that Karl Thompson may have been involved in the incident at the Mustang Store. *Id.* Finally, law enforcement officers interviewed Mr. Thompson's mother, who told officers about statements made by codefendant Kevin Marquez after the alleged robbery. *Id.* Mr. Thompson argues that each of these statements cannot be introduced at trial because they are impermissible hearsay (out-of-court statements offered in evidence to prove the truth of the matter asserted). *Id.* (citing Fed. R. Evid. 801(c)). Mr. Thompson also argues that the introduction of these statements would violate his Sixth Amendment right to confront the witnesses against him under *Crawford v. Washington*, 541 U.S. 36 (2004). *Id.* at 3-4. He accordingly requests that the Court exclude hearsay statements made by Mr. Silversmith, Mr. Eddie, and Mr. Marquez to Mr. Wilson and Ms. Thompson, respectively, as inadmissible hearsay. *Id.* The government is unopposed to the Hearsay MIL. *See* Doc. 248. ("The United States does not object to the relief sought therein.").

      Hearsay testimony is generally inadmissible. Fed. R. Evid. 802. Under Rule 801(c) of the Federal Rules of Evidence: "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted. *See United States v. DeLeon*, 418 F. Supp. 3d 682, 742 (D.N.M. 2019) (citing *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008)). Hearsay is generally unreliable and untrustworthy. *See Chambers v. Mississippi*, 410 U.S. 284, 288 (1973) (noting that hearsay is generally untrustworthy and lacks traditional indicia of reliability); *United States v. Lozado*, 776 F.3d 1119, 1121 (10th Cir. 2015) ("Hearsay is generally inadmissible as evidence because it is

considered unreliable."). Courts use three devices to illuminate inaccuracies in testimony: (1) the oath; (2) personal presence at trial; and (3) cross examination. *See United States v. Baca*, No. CR 16-1613 JB, 2018 WL 6602216, at *26 (D.N.M. Dec. 17, 2018) (unreported) (citing Weinstein's Federal Evidence § 802.02[2][a], at 802-5)). Courts view hearsay evidence as unreliable because it is not subject to an oath, personal presence in court, or cross examination. *Id.*

The statements that Mr. Thompson asks the Court to exclude also implicate the Confrontation Clause of the Sixth Amendment. The Confrontation Clause states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford*, the Supreme Court held that, under the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59. The Tenth Circuit defines a testimonial statement not made during police interrogation as "a formal declaration made by the declarant that, when objectively considered, indicates that the primary purpose of the [statement is] to establish or prove past events potentially relevant to later criminal prosecution." *United States v. Morgan*, 748 F.3d 1024, 1038 (10th Cir. 2014) (internal citation and quotation marks omitted).

Here, Mr. Thompson objects to (1) statements made by Mr. Silversmith and Mr. Eddie to Bruce Wilson after the robbery that Mr. Wilson reported to officers during a jailhouse interview; (2) a crime stopper tip that Mr. Thompson may have been involved in the incident at the Mustang store; and (3) statements made by Mr. Marquez to Mr. Thompson's mother after the alleged robbery. Doc. 221 at 3. Each of these statements is hearsay evidence under Rule 801(c), as they constitute out-of-court statements offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Such hearsay statements are generally inadmissible, Fed. R. Evid. 802, and here there is no

indication that these statements are otherwise admissible though any of the exceptions to the general hearsay prohibition. *See* Fed. R. Evid. 803, 804. For these reasons, Mr. Thompson's Hearsay MIL will be granted.

### III.   The Bruce Wilson Motion *in Limine*

Karl Thompson's Bruce Wilson MIL asks the Court to exclude the introduction of testimony by Bruce Wilson as hearsay and irrelevant. Doc. 224. He states that during their investigation of the April 18, 2019 robbery of the Mustang convenience store, officers conducted a jailhouse interview with Bruce Wilson. *Id.* Mr. Wilson was arrested with Mr. Silversmith after the robbery, but Mr. Thompson asserts that there is no evidence that Mr. Wilson was involved in the robbery or that he ever spoke with or met Mr. Thompson. Doc. 261 at 2. Mr. Thompson argues that Mr. Wilson's statements to the police are hearsay under Rule 801(c) and are irrelevant because neither Mr. Silversmith nor Mr. Eddie is on trial. *Id.* at 2. Mr. Thompson also argues that introducing these statements through Mr. Wilson's testimony would violate his Sixth Amendment right to confront the witnesses against him. *Id.* (citing *Crawford*, 541 U.S. at 58). The government is unopposed to the Bruce Wilson MIL. *See* Doc. 248. ("The United States does not object to the relief sought therein but reserves its right to call any witness that may become necessary during rebuttal.").

In a supplement to the Bruce Wilson MIL, Mr. Thompson submitted a summary of Bruce Wilson's interview with police. Doc. 261. The interview is difficult to follow, as it does not appear to present events in a linear timeframe. Doc. 261-1. In the interview, Mr. Wilson informed police that it had been his birthday and so he caught a ride with Mr. Silversmith to celebrate. Doc. 261-1 at 2. Mr. Wilson stated that he woke up in the woods and learned from Mr. Eddie that there had been an armed robbery. *Id.* He saw alcohol in the possession of Mr. Silversmith, Mr. Eddie,

and a "friend of theirs." *Id.* Mr. Wilson explained that they picked up liquor that had been stashed and consumed it in a truck. *Id.* Mr. Wilson told officers that when he woke up at 8:00 A.M., he was in the vehicle and was "not aware of the incident" because he was "'black out' and too drunk." *Id.*

As explained in the Court's discussion of the Hearsay MIL, hearsay testimony is generally inadmissible unless there is an applicable exception. *See supra* Section II; Fed. R. Evid. 802, 803, 804. Here, Mr. Thompson objects to testimony from Bruce Wilson regarding statements made by Mr. Silversmith and Mr. Eddie to him after the robbery. Doc. 224 at 3. The Court ruled above that such statements constitute hearsay and are inadmissible. Although the government does not object, it indicated that it reserves its right to call any witness that may become necessary during rebuttal. Doc. 248. To the extent that this may include Bruce Wilson's testimony as to this hearsay evidence, this motion *in limine* will be granted.

**IV.     The Face Mask Motion *in Limine***

Karl Thompson's Face Mask MIL requests that the Court allow jurors to remove their face masks during voir dire and witnesses to remove their face masks while they testify. Doc. 227. He notes that jury selection has been drastically altered since the COVID-19 pandemic began in March 2020. In support of his request, he notes that the ability to observe jurors' facial expressions and body language is essential to the intelligent and meaningful exercise of peremptory challenges. *Id.* at 2 (citing *United States v. Ruiz*, 894 F.2d 501, 506 (2d Cir. 1990) (allowing excusal of juror making "facial expressions" suggesting "that she really did not want to sit"); *Barfield v. Orange County*, 911 F.2d 644, 648 (11th Cir. 1990) (holding that hostile facial expressions and body language are race neutral)). He asks that jurors be provided clear face masks so that counsel can effectively evaluate each juror's demeanor during jury selection. *Id.* Additionally, he argues that

face mask removal for witnesses while they testify is necessary to his Sixth Amendment right to physically face those who testify against him. *Id.* at 3 (citing *Crawford*, 541 U.S. at 42; *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988)). He asserts that the removal of face masks will allow him to "actually hear" the witness and observe facial expressions, which "are a critical component of body language and demeanor" and "contribute significantly to the determination of credibility." *Id.* The government is unopposed to the Face Mask MIL. *See* Doc. 248. ("The United States does not object to the relief sought therein.").

The Court continues to evaluate its response to the spread of COVID-19 in order to balance the need to assist in the preservation of public safety and health while effectively administering justice during this period of national emergency. The Court is following all applicable Administrative Orders issued in the United States District Court for the District of New Mexico. On May 18, 2021, Administrative Order 21-MC-00004-17 was issued in accordance with the Centers for Disease Control and Prevention ("CDC") guidelines regarding COVID-19 safe practices for fully vaccinated individuals[1] and the New Mexico Department of Health ("NMDOH") clarifying Public Health Emergency Order.[2] This Administrative Order states that all persons entering courthouse facilities who are not fully vaccinated are still required to wear a face mask and socially distance from other individuals. Individuals who are fully vaccinated do not need to wear a face mask or socially distance from others. The Court will not be inquiring

---

[1] *See* CDC, *Interim Public Health Recommendations for Fully Vaccinated People* (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.

[2] *See* Tracie C. Collins, M.D., *Public Health Emergency Order Clarifying that Current Guidance Documents, Advisories, and Emergency Public Health Orders Remain in Effect; and Amending Prior Public Health Emergency Orders to Impose County-by-County Restrictions Due to COVID-19* (May 14, 2021), https://cv.nmhealth.org/wp-content/uploads/2021/05/NCOV-PHO-20210514-.pdf.

about the vaccination status of potential jurors and witnesses, but it will inform them that if they are fully vaccinated then they are not required to wear a face mask.

The Court agrees with Mr. Thompson that an unimpeded opportunity to cross-examine adverse witnesses face-to-face and in full view of the jury is core to the Sixth Amendment right of confrontation.  As the Supreme Court explained over 125 years ago:

> The primary object of [this provision] was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, *but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief*.

*Mattox v. United States*, 156 U.S. 237, 242-43 (1895) (emphasis added).  The Court will require testifying witnesses who do not remove their masks after being informed that vaccinated individuals do not need to wear a face mask to replace their face mask with a clear face shield.  This will appropriately strike the balance of minimizing health risks, as the witnesses will be situated apart from other trial participants on the witness stand, and retaining the full force of Mr. Thompson's Sixth Amendment rights.

However, prospective jurors during voir dire are not separated from one another in the way that testifying witnesses are.  Requiring prospective jurors who have kept their face masks on to remove their masks will therefore create an unacceptable health risk in light of COVID-19.  Unlike with the Confrontation Clause issue with masked witnesses, the Court is aware of no authority, nor has Mr. Thompson cited any, holding that the Sixth Amendment right to an impartial jury or Due Process demand that the defendant have unimpeded visual access to prospective jurors' facial expressions during jury selection.  *See, e.g., United States v. Robertson*, No. 17-CR-02949-MV-1, 2020 WL 6701874, at *2 (D.N.M. Nov. 13, 2020).  The Court believes that Mr. Thompson's ability

to ask questions during voir dire and to see the upper half of prospective jurors' faces is enough to satisfy his constitutional rights during jury selection, at least during an ongoing a global pandemic.

For the foregoing reasons, Mr. Thompson's Face Mask MIL will be granted in part. The Court will announce that vaccinated individuals are not required to wear their face masks and will order testifying witnesses whose face masks remain on to replace their masks with clear face shields. The Court will not order jurors and prospective jurors who keep their face masks on to replace their masks with clear face shields.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the United States' Motion *in Limine* to Prohibit Discussion of Sentencing or Punishment at Trial [Doc. 191] is **GRANTED**; Mr. Thompson's Unopposed Motion *in Limine* to Exclude Hearsay [Doc. 221] is **GRANTED**; Mr. Thompson's Unopposed Motion *in Limine* to Exclude Testimony of Bruce Wilson [Doc. 224] is **GRANTED**; and Mr. Thompson's Unopposed Motion *in Limine* to Allow Jurors During Voir Dire and Witnesses While They Testify to Remove Face Masks [Doc. 227] is **GRANTED IN PART**.

ENTERED this 11th day of June 2021.

MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE