IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

KARL THOMPSON,

       Defendant.

Crim. No. 19-1610-MV-4

## **AMENDED MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on the United States' Notice of Intent to Offer Defendant's Plea Admissions and Motion *in Limine* Seeking Pretrial Ruling on the Admissibility of Evidence (the "Motion"). Doc. 192. Mr. Thompson filed a response in opposition [Doc. 212] and the government filed a reply [Doc. 239]. Having carefully considered the Motion, relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and will be **DENIED**.

### BACKGROUND

On April 18, 2019, Mr. Thompson and three other individuals allegedly committed armed robbery of liquor items from a Mustang Convenience store in Vanderwagen, New Mexico. Doc. 192 at 1. During the robbery, two firearms were passed among Mr. Thompson and his codefendants. *Id.* at 2. His codefendants pointed the firearms at the customers in the store and at the cashier's head. *Id.* One of his codefendants fired a shot into the store ceiling. *Id.* The store's surveillance cameras captured the robbery. *Id.* On June 12, 2019, a federal grand jury returned an indictment charging Mr. Thompson, Julian C. Silversmith, Aurelius Jamal Eddie, and Kevin Marquez with one count of Interference with Interstate Commerce by Robbery and Violence, in

violation of 18 U.S.C. §§ 1951(a) and 2, and one count of Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and 2. Doc. 13.

On December 13, 2019, Mr. Thompson pled guilty to an information [Doc. 82] charging him with one count of Interference with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. §§ 1951(a) and 2, and one count of Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i), pursuant to a binding Rule 11(c)(1)(C) plea agreement. Doc. 85. As part of the plea agreement, Mr. Thompson made a written admission of facts detailing his role in the robbery. *Id.* at ¶ 9. The parties agreed that a specific sentence of five to ten years of imprisonment was appropriate. *Id.* at ¶ 11(a). Additionally, the plea agreement specified:

> **Except under circumstances where the Court, acting on its own, rejects this plea agreement**, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

*Id*. at ¶ 13 (emphasis added). The trial was vacated, and the case was referred to United States Probation to prepare for sentencing.

Mr. Thompson's sentencing hearing began on January 29, 2021. Doc. 166. During the hearing, the Court gave Mr. Thompson an opportunity to allocute. Doc. 185, Transcript of January Sentencing Hearing, at 5:18-21. He stated, "I just want to say that I'm sorry, and I just want to own up to my mistake and make—take full responsibility." *Id.* at 8:16-24. After this allocution, Mr. Thompson's attorney asked for a brief recess to consult with her client. *Id*. at 8:25-9:1. After

the recess, Mr. Thompson asked to withdraw his guilty plea and indicated that he wanted to pursue a duress defense. *Id.* at 10:2-12. The government opposed this request. *Id.* at 10:15-25. The Court urged flexibility in the matter and stated, "This case has been extremely difficult for me . . . These Defendants are extremely young, and Mr. Thompson, out of all of them, really doesn't belong in prison." *Id.* at 11:1-5. The Court noted that the government's pre-prosecution program is under-utilized and could be appropriate to give Mr. Thompson another chance. *Id.* at 11:6-20. The Court also expressed concern about the plea agreement's binding sentencing range of five to ten years, stating:

> [F]ive years in prison, our prisons are a mess. They're a place of extreme violence. And for young people like the ones we have right now in this case, it means rape that they cannot defend themselves against. It means horrific acts of violence that further traumatizes them. Part of my work as a Judge is to work with them when they are released from prison and to try to undo not only the damage that they go in there with, but to undo the damage that they come out of prison with and to try to make them our good neighbors. . . .
>
> [W]e spend hours with individuals that have been in all of our most dangerous prisons in order to try to teach them how to handle living in society again. I would really urge you—I urge you, please, to give this case a second thought. This is a promising young man. . . .
>
> I know that we can work with him, and I know he can be successful. And I know—I know that he can make his family, his community and all of us proud. But I can't say that if we send him to prison, because I've seen too many of my defendants come out and be so much more traumatized. I understand that some people do belong there, and I have sent people there very recently that need to be there for the length of time that I have sent them there. But this is not one of those individuals. And I urge you, please, to step out of your roles and to give greater thought to the circumstances in this case.

*Id.* at 11:21-12:4; 12:12-16; 13:9-17. Following this message from the Court, Mr. Thompson asked whether the Court was inclined to reject the plea agreement. *Id.* at 15:4-5. After hearing arguments from both the government and Mr. Thompson, the Court continued the sentencing hearing. *Id.* at 25:7-10.

3

Thereafter, on March 10, 2021, the Court held a second hearing during which it rejected the plea agreement. Doc. 173. At the hearing, the Court stated that it was exercising its judicial discretion to reject the Rule 11(c)(1)(C) plea agreement because the agreement was binding on the Court and it stipulated to a sentencing range of five to ten years imprisonment. Doc. 174, Transcript of March Hearing, at 4:18-5:6 (citing *United States v. Robertson*, 45 F.3d 1423, 1438 (10th Cir. 1995)). The Court explained that it believed the five- to ten-year sentencing range "would require a sentence that is much greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a)." *Id.* at 6:15-16. Specifically, the Court stated:

> Although the offenses in this case were very serious, Mr. Thompson was only 19 at the time and he was extremely intoxicated. He initially entered the store unarmed and now asserts that he only returned with a handgun after he was threatened by one of his co-defendants to do so. Mr. Thompson also made statements to his mother that it was Julian Silversmith, Mr. Eddie's father and the only adult present that day, who instigated the robbery and who "had to pump his son up"—that's in quotes—prior to the events.
>
> Mr. Thompson also suffered from severe mental illness in the years leading up to the offense and tried to take his life several times, a mental and emotional decline triggered by his confirmation as a teenager that he was given up for adoption by his biological mother when he was an infant. And, critically, Mr. Thompson has been on release in this case since September 2019, almost a year-and-a-half now. During that time, he has held a job when the COVID pandemic has allowed, he has attended mental health treatment, and has finally found a right combination and dose of medications to alleviate some of the crippling symptoms of his severe anxiety and depression. He has not committed any new offenses, and he has almost been entirely compliant with his conditions of release.
>
> The Court strongly feels that sending Mr. Thompson to prison for a minimum of five years under the plea agreement would undo all of the critical rehabilitation that he has achieved. It would compromise his mental health, which has improved significantly in recent months. It would put him at great physical risk given his age and vulnerabilities. And in inflicting these traumas on Mr. Thompson, such a sentence would make him more likely to reoffend, not less, and would in turn make the community less safe, in contravention of the sentencing goals that the Court is required to promote under 18 U.S.C. § 3553(a).
>
> For all of these reasons, after giving great thought to the circumstances of the offense, as to Mr. Thompson's own background, his criminal history category I,

> and his accomplishments while he has been on supervised release, the Court thoughtfully rejects Mr. Thompson's Rule 11(c)(1)(C) plea agreement and its binding sentencing range of five to ten years.

*Id.* at 6:16-8:3.

After the Court rejected Mr. Thompson's plea agreement, he withdrew his plea of guilty pursuant to Rule 11(c)(5) of the Federal Rules of Criminal Procedure. *Id*. at 9:5-15. Later, on April 22, 2021, a federal grand jury returned a superseding indictment charging Mr. Thompson with the same offenses as the first indictment and an additional charge of Conspiracy to Interfere with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. § 1951(a). Doc. 196.

On the instant Motion, the government seeks to introduce as evidence a redacted copy of Mr. Thompson's signed plea agreement showing the written factual basis for his guilty plea, the attestation that the factual basis is correct, the date of the agreement, and the parties' signatures. Doc. 192 at 6. Mr. Thompson opposes the introduction of any such evidence. Doc. 212 at 1.

## DISCUSSION

In support of its motion to introduce evidence of Mr. Thompson's plea admissions, the government acknowledges that under Rule 410 of the Federal Rules of Evidence, "[a]s a general matter, evidence of a guilty plea or statements made in plea negotiations are inadmissible." *United States v. Mitchell*, 633 F.3d 997, 1002 (10th Cir. 2011). The government, however, argues that, in his plea agreement, Mr. Thompson expressly waived his right to the protections of Rule 410, and expressly agreed that his plea admissions are admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence, which provides that "a party's own statement, when offered against him, is not hearsay." Doc. 192 at 6 (citing *United States v. McElhiney*, 85 F. App'x 112, 115 (10th Cir. 2003) (unreported)). Mr. Thompson disagrees that he waived his right either to the protections of Rule

410 or to the admissibility of his plea admissions under the circumstances present here, namely, where the Court, "acting on its own, reject[ed] []his plea agreement." Doc. 212 at 4. As set forth herein, the Court agrees with Mr. Thompson that because it acted on its own in rejecting his plea agreement, the Rule 410 waiver provision in the plea agreement is not applicable and his plea admissions thus are not admissible, under Rule 801(d)(2)(A) or otherwise.

Rule 410 states:

**Pleas, Plea Discussions, and Related Statements**

**(a) Prohibited Uses**. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>   (1) a guilty plea that was later withdrawn;
>   (2) a nolo contendere plea;
>   (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
>   (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410. The protections of Rule 410, however, may be waived by the express terms of a plea agreement into which a defendant has knowingly and voluntarily entered. *See United States v. Mezzanatto*, 513 U.S. 196, 198 (1995); *Mitchell*, 633 F.3d 1004-05. In *Mezzanatto*, the Supreme Court rejected the defendant's challenge to a waiver provision in his plea agreement that allowed the government to use statements that he had made during plea negotiations for impeachment purposes if the case proceeded to trial. 513 U.S. 196, 198 (1995). The Court held that "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Id.* Accordingly, if a defendant's plea agreement contains a Rule 410 waiver and he later proceeds to trial, the government may use his statements made during plea discussions to impeach any contradictory testimony. *Id. Mezzanatto* generated a three-justice concurrence that

advocated a narrower scope of the holding and emphasized the case only dealt with an impeachment waiver, as well as a dissent that challenged the legal conclusion that a presumption of waivability should apply. *Id*. at 211, (Ginsburg, J., concurring); *Id.* at 217 (Souter, J., dissenting).

In *United States v. Mitchell*, the Tenth Circuit extended the Supreme Court's holding in *Mezzanatto* to allow the government to use the defendant's statements from plea negotiations in its case-in-chief. 633 F.3d at 999. Finding that Mr. Mitchell had entered into the plea agreement "knowingly and voluntarily," the Court upheld the Rule 410 waiver included therein, despite the fact that the defendant ultimately withdrew his guilty plea. *Id.* at 1002. Mr. Mitchell requested that the Tenth Circuit "take the admonition of the *Mezzanatto* concurrence and dissent to heart and bar the admissibility of the plea statements in the government's case-in-chief." *Id.* at 1004. The Tenth Circuit rejected this position and explained that it saw "no analytical distinction between Rule 410's application to impeachment waivers and case-in-chief waivers." *Id.* Consequently, pursuant to a valid Rule 410 waiver in a defendant's plea agreement, the government may use statements made during plea discussions for impeachment *and* during its case-in-chief. *Id.*

Under this precedent, the government argues that Mr. Thompson entered into his plea agreement knowingly and voluntarily and thus, despite ultimately withdrawing his guilty plea, he is bound by the Rule 410 waiver in his plea agreement and his plea admissions are admissible at trial. Doc. 192 at 1. As Mr. Thompson notes, however, the waiver provision in his plea agreement specifically states that it is not applicable "under circumstances where the Court, acting on its own, rejects this plea agreement." Doc. 212 at 3. Thus, regardless of whether Mr. Thompson knowingly and voluntarily entered into his plea agreement, the applicability of the waiver provision included therein depends, in the first instance, on whether the Court "acted on its own" in rejecting Mr.

7

Thompson's plea agreement.

In arguing that the Court acted on its own, Mr. Thompson reasons that because the Court has broad discretion to review and reject plea agreements, its decision to reject his plea agreement must necessarily mean that the Court "acted on its own." Doc. 212 at 4. According to Mr. Thompson, the Court acts on its own "*every* time its Sentencing authority is implicated." *Id.* at 4 (emphasis in original). The government disagrees, countering that Mr. Thompson's interpretation would render the phrase "acting on its own" superfluous because it would be intrinsic to the process of rejecting a plea agreement. Doc. 239 at 4 (citing *United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998)). And according to the government, the circumstances here demonstrate that the Court did not "act on its own," because the Court did not indicate its intention to reject the plea agreement until *after* Mr. Thompson expressed his desire to withdraw from his guilty plea. Doc. 192 at 7. Because Mr. Thompson "did not play a neutral role in this process," the government argues, the circumstances here do not fit into the exception to Mr. Thompson's Rule 410 waiver. *Id.* at 8, 10.

While the Court agrees that it does not inherently act on its own *every* time it exercises its authority to reject a Rule 11(c)(1)(C) plea agreement, the inclusion of the phrase "acting on its own" in the Rule 410 waiver provision necessarily means that there must be circumstances in which a court's rejection of a plea agreement occurs of its own accord. Mr. Thompson aptly notes that in interpreting a plea agreement, the Court must hold the government to the agreement's literal terms and construe any ambiguity in favor of the defendant. *See* Doc. 212 at 4 (citing *United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008) (citations omitted)); *see also Brye*, 146 F.3d at 1210 ("As with the interpretation of any contract, we also apply the maxim that the agreement should be construed against its drafter."); *United States v. Welch*, 638 F. App'x 674, 676 (10th Cir.

2015) (unpublished) ("[A]ny ambiguities are interpreted against the government as the drafter of the agreement."). Here, the phrase "acting on its own" is ambiguous and there are multiple possible interpretations. Admittedly, this language allows for the government's interpretation, namely, that because the Court's rejection of the plea agreement followed Mr. Thompson's statement regarding his desire to withdraw his guilty plea, the Court did not act on its own. But such an interpretation would construe the ambiguities in favor of the government, which would be improper. Rather, in construing the ambiguity of the waiver language against the government, as the drafter of the plea agreement, the Court easily concludes that in deciding to reject the plea agreement because of its own well-considered analysis of this case, the Court acted on its own in rejecting the plea agreement, regardless of whether it made a record of that analysis after Mr. Thompson made known his desire to withdraw his plea.

Indeed, the record demonstrates that the Court's decision to reject the plea was based on its independent determination that the five- to ten-year sentencing range required by the agreement was far greater than necessary to satisfy the purposes set forth in 18 U.S.C. § 3553(a), and that the traumas of incarceration would make Mr. Thompson *more* likely to reoffend, thus making the community less safe. *See* Doc. 174, Transcript of March Hearing, at 6:12-8:3. During both the January 29 and March 10 hearings, the Court expressed serious concerns about the plea agreement. Specifically, at the January 29 hearing, the Court stated, "[t]his case has been extremely difficult for me." Doc. 185 at 11:2-3. The Court was troubled by the lengthy sentence that it would be required to impose under the binding Rule 11(c)(1)(C) plea agreement and expressed its concerns about being forced to sentence Mr. Thompson to at least five years in prison, where he would be exposed to violence and likely emerge more traumatized. *Id.* at 11:21-12:4; 12:12-16; 13:9-17. Indeed, the Court was sufficiently troubled by the implications of accepting the plea agreement

9

that it continued the sentencing hearing. *Id.* at 11. And at the March 10 hearing, the Court gave detailed reasons pursuant to Rule 11(c)(5) for its rejection of the plea agreement. Doc. 174, Transcript of March Hearing, at 6:12-9:3. The Court articulated its concern that the agreement's five- to ten-year sentencing range would require a sentence far greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). *Id.* at 6:13-16. The Court also noted the remarkable strides toward rehabilitation that Mr. Thompson has made during his time on supervised release—strides that the Court felt would be entirely undone by sending him to prison for even the minimum term of imprisonment mandated by the agreement. *Id.* at 7:13-15.

The record thus makes clear that the Court acted on its independent analysis of this case when it rejected Mr. Thompson's plea agreement, regardless of the fact that its statements on the record explaining that analysis followed Mr. Thompson's request to withdraw his guilty plea. Under these circumstances, the Court finds that it was "acting on its own" when it rejected the plea agreement, and that Mr. Thompson's Rule 410 waiver is thus not applicable.

The cases cited by the government do not suggest a contrary result, as none of those cases involved a situation where, as here, the Rule 410 waiver contained an exception for circumstances where the court acted on its own in rejecting a plea agreement. *See, e.g., Mitchell*, 633 F.3d at 999; *United States v. Jim*, 786 F.3d 802, 806 (10th Cir. 2015) (district court allowed defendant to withdraw guilty plea but did not reject his plea agreement and "specifically warned him that, in light of his Rule 410 waiver, if [he] withdrew his guilty plea and went to trial, the Government would be able to present to the jury evidence of Jim's admissions made when he entered the plea"). In particular, the Court does not agree that *Jim* stands for the broad proposition that a Rule 410 waiver shall be invalidated only when it is later determined that the defendant unknowingly and involuntarily entered into the agreement. Doc. 192 at 7. The government relies heavily on a
10

passage in *Jim* in which the Tenth Circuit stated:

> [I]t would make no sense to deny the efficacy of the Rule 410 waiver just because the guilty plea was withdrawn because that would render the waiver largely meaningless and deprive the Government of the benefit of its bargain. The clearly contemplated situation where the Rule 410 waiver would have any usefulness to the Government is precisely this situation—where the defendant failed to carry out his side of the bargain to plead guilty and thereby forced the Government to trial.

*Jim*, 786 F.3d at 809. As the Western District of Oklahoma noted, "[t]his passage is dicta [] because the issue in *Jim* was not the enforceability of the waiver itself but the voluntariness of the plea agreement as a whole." *United States v. Keogh*, No. CR-17-290-D, 2019 WL 4120827, at *5 (W.D. Okla. Aug. 29, 2019). Here, the issue is precisely the enforceability of the waiver, rather than the voluntariness of the plea agreement. Moreover, any plea agreement necessarily has gains and losses for both parties. The government avoids spending resources preparing for trial, but it may lose the right to pursue additional criminal charges arising out of the facts forming the basis of the current charge. The defendant may obtain a more favorable sentence or lessen the charges against him, but he must also waive some of his rights under the rules of criminal procedure and evidence and the right to appeal his conviction and sentence. It is beyond dispute that Mr. Thompson did not obtain the benefit of his bargain; he is facing additional counts and additional time in prison. Although the government argues that it is Mr. Thompson's own actions that led to him withdrawing from the bargain, the fact remains that the Court's decision to reject the plea agreement means that neither party is receiving the benefits envisioned therein.

## CONCLUSION

For the reasons set forth above, the Court concludes that it acted on its own when it rejected Mr. Thompson's Rule 11(c)(1)(C) plea agreement. The Rule 410 waiver contained in paragraph 13 of the plea agreement therefore is inapplicable and will not be enforced. Accordingly, Mr. Thompson's plea admissions are not admissible under any rule of evidence or for any purpose,

11

whether as impeachment evidence or in the government's case-in-chief.

**IT IS THEREFORE ORDERED** that the United States' Notice of Intent to Offer Defendant's Plea Admissions and Motion *in Limine* Seeking Pretrial Ruling on the Admissibility of Evidence [Doc. 192] is **DENIED**.

ENTERED this 22nd day of June 2021.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE