IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                                         No. 19-CR-01610-MV-4

KARL THOMPSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the government's Motion *In Limine* to Prohibit Introduction of Psychological or Mental Health Evidence at Trial. Doc. 193. Mr. Thompson filed a response [Doc. 211] and the government filed a reply [Doc. 241]. Having considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken in part and will be **GRANTED IN PART** as described below.

## BACKGROUND

Mr. Thompson is charged in a three-count superseding indictment with Conspiracy to Interfere with Interstate Commerce by Robbery and Violence (Conspiracy to Commit Hobbs Act Robbery), in violation of 18 U.S.C. § 1951(a); Interference with Interstate Commerce by Robbery and Violence (Hobbs Act Robbery) and Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 1951(a); and Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i–iii). After initially pleading guilty to an earlier information, Mr. Thompson withdrew his guilty plea [Doc. 173] and a trial in the case is set for June 28, 2021 [Doc. 210].

On April 2, 2021, Mr. Thompson provided notice pursuant to Rule 12.2 of the Federal

Rules of Criminal Procedure that he "intends to present mental health evidence to support a duress defense at time of trial." Doc. 176. He then provided notice pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure that he intends to call Dr. Julie Brovko, a forensic psychologist, to testify as an expert witness in his defense. Doc. 219. Dr. Brovko will testify about "her evaluation of Mr. Thompson and her medical opinion about his mental health issues and how they made him more susceptible to particular stressors and his reactions thereto." *Id*. at 2. "In particular, Dr. Brovko may testify about the concept of suggestibility in the context of forensic psychology" as well as "how Mr. Thompson's history of substance abuse and other mental health disorders placed him at higher risk for and influenced his suggestibility when confronted with a particularly stressful or frightening situation." *Id*. The defense has provided the Court and the government with a copy of Dr. Brovko's forensic evaluation of Mr. Thompson. Dr. Brovko Forensic Evaluation ("Brovko Evaluation").

In the instant motion, the government asks the Court to exclude "any evidence regarding [Mr. Thompson's] mental health or alleged 'susceptibility' to pressure and influence," including, but not limited to: (1) testimony from Dr. Brovko regarding Mr. Thompson's mental health diagnoses and functioning; (2) testimony from Dr. Mercedes Marshall; and (3) testimony from Mr. Thompson or his family about [his] mental health symptoms, diagnoses, or history. Doc. 193 at 1. The government makes several arguments in support of its request. First, it argues that under the Tenth Circuit's recent decision in *United States v. Dixon*, 901 F.3d 1170 (10th Cir. 2018), a duress defense must be judged through the lens of what is "objectively reasonable"—not what is reasonable only through the "distorted lens" of a defendant's mental illness. Doc. 193 at 3–4 (quoting *Dixon*, 901 F.3d at 1182). As a result, evidence about Mr. Thompson's psychological condition and his idiosyncratic reaction to the events of this case is irrelevant to his duress defense

and is therefore inadmissible under Rule 402 of the Federal Rules of Evidence. *Id*. at 4 (citing Fed. R. Evid. 402). Second, the government argues that Mr. Thompson's proposed mental health evidence would run afoul of the Insanity Defense Reform Act of 1984 (IDRA), 18 U.S.C. § 17(a), because it would support the kind of diminished capacity or volitional defense that the Act eliminated when it narrowed the boundaries of the insanity defense in federal court. Doc. 193 at 4–7. Finally, the government argues that the proposed mental health evidence should be excluded under Rule 403 of the Federal Rules of Evidence because it runs the risk of "confusing the issues surrounding the elements of a duress defense and misleading the jury into believing [Mr. Thompson] may be excused from his criminal conduct based on his mental struggles." *Id*. at 8.

Mr. Thompson makes a number of arguments in response. Doc. 211. He argues that *Dixon* is distinguishable from the instant case because, unlike in *Dixon*, he is not arguing that his mental illness altered his perception of reality or caused him to act unreasonably; instead, he is arguing that "his mental health issues influenced his reaction to an already reasonable fear of harm" and that they "made him more susceptible to an otherwise objective fear." *Id*. at 3–4. Mr. Thompson also distinguishes *Dixon* because it relied on the Tenth Circuit's Criminal Pattern Jury Instruction on duress, whereas he "intends to propose a modified instruction based on language from jury instructions and caselaw from other circuits." *Id*. at 4. He additionally notes that a number of courts have admitted testimony on Battered Woman Syndrome in support a duress defense and Battered Woman Syndrome is "similar to depression, one of [his] mental health issues, in that it is a mental illness that may affect a person's reaction to a specific reality." *Id*. at 6. With regard to the IDRA, Mr. Thompson argues that it is inapplicable because he "is not attempting to claim any sort of mental health defense"; instead, he is claiming duress and the IDRA "is silent as to what types of evidence may be used to prove duress." *Id*. at 12. Finally, he argues that the evidence in

question should not be excluded under Rule 403 because "his mental health is highly relevant in showing how a reasonable person confronting [his] particular circumstances would act in the specific situation" and "there is a very low likelihood that presenting evidence of the defendant's mental health issues is likely to prejudice a jury." *Id*. at 13.

In reply, the government argues that (1) Mr. Thompson's attempts to distinguish *Dixon* fail and *Dixon* forecloses the introduction of any kind of mental health evidence in support of a duress defense; (2) the Court should use the Tenth Circuit's pattern jury instruction on duress because it accurately reflects the Tenth Circuit's controlling caselaw in this area; (3) despite Mr. Thompson's statements to the contrary, his proposed mental health evidence violates the IDRA because it goes to his ability to control his actions and his susceptibility to pressure, which make out an "inadmissible diminished capacity defense"; (4) the cases addressing evidence of Battered Woman Syndrome are unavailing because they interpret the Model Penal Code's (MPC's) duress instruction, not the Tenth Circuit's, and evidence of Battered Woman Syndrome is unique because it is "grounded in externally verifiable abuse and contextualizes the history of a defendant and her attacker"; and (5) Mr. Thompson's own arguments undermine the relevance of his proposed mental health evidence because he acknowledges that the fear he faced was objectively reasonable regardless of his mental health struggles. Doc. 241 at 1–12.

## DISCUSSION

The Court has considered the parties' briefs and the relevant law. It has also reviewed Mr. Thompson's Notice of Defense [Doc. 176], his Notice of Expert Witness Testimony for Dr. Brovko [Doc. 219], and Dr. Brovko's 23-page psychological evaluation of Mr. Thompson. For the reasons explained below, the Court finds that Mr. Thompson's proposed mental health evidence is irrelevant to his duress defense under *Dixon*; it would likely run afoul of the restrictions

4

placed on mental health evidence by the IDRA and the Tenth Circuit's discussion of the same in *United States v. Brown*, 326 F.3d 1143 (10th Cir. 2003); and its limited probative value is substantially outweighed by the risk that it would confuse the issues and mislead the jury. The Court will therefore grant the government's motion insofar as it relates to the mental health evidence Mr. Thompson seeks to introduce in support of his duress defense. The Court will not go so far as to blanketly exclude "any evidence regarding [Mr. Thompson's] mental health" [Doc. 193 at 1], however, because such evidence could potentially be relevant to issues of specific intent.

**I.      Mr. Thompson's Proposed Mental Health Evidence Is Irrelevant to His Duress Defense Under The Tenth Circuit's Controlling Decision in *Dixon*.**

The government first argues that Mr. Thompson's proposed mental health evidence is inadmissible because it is irrelevant to a duress defense as the defense has been defined by the Tenth Circuit. Doc. 193 at 3–4. The Court agrees.

**A. Legal Standard**

Duress is an affirmative defense to criminal liability. *United States v. Overton*, 437 F. Supp. 3d 1078, 1084 (D.N.M. 2020). In the Tenth Circuit, the defense has three elements:

1. [T]he defendant was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself [or a family member, or others];

2. [T]he defendant had no reasonable, legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the threatened harm; and

3. [A] direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm.

Tenth Cir. Crim. Pattern Jury Instr. 1.36 (2021). The defendant bears the burden of proving these elements by a preponderance of the evidence. *See id.*; *see also* United *States v. Beckstrom*, 647 F.3d 1012, 1016 (10th Cir. 2011).

5

In *Dixon*, the Tenth Circuit discussed what role, if any, a defendant's unique psychological conditions have in establishing their entitlement to a duress defense. 901 F.3d at 1170. There, the defendant was charged with embezzlement and theft from an Indian tribal organization in violation of 18 U.S.C. § 1163. *Dixon*, 901 F.3d at 1173. Prior to trial, the defendant filed a Notice of Defense notifying the district court that she intended to present a duress defense under the elements set forth in the Tenth Circuit's pattern jury instruction on duress. *Id*. at 1175. She proffered that "she faced an imminent threat of sexual assault from her stepfather and believed that she had no recourse to escape that assault other than by stealing the funds at issue." *Id*. To support her duress defense, the defendant "sought to admit expert testimony tending to show that she suffered from PTSD and that her perception of duress was reasonable when viewed in light of that diagnosis." *Id*. The district court rejected the proposed duress defense and prohibited the defendant from introducing evidence of her sexual abuse "as well as her experts' testimony as to the effects of PTSD on [her] ability to perceive alternative options." *Id*. The defendant was then convicted and argued on appeal that the district court erred in refusing to instruct the jury on duress. *Id*. The Tenth Circuit affirmed, holding that the defendant "failed to make out the threshold showing to present a duress defense to the jury" because she "failed to show that she had no reasonable, legal alternative to violating the law." *Id*. at 1179. In so holding, the Tenth Circuit noted that the "*sine qua non* of any justification defense is a lack of a reasonable, lawful alternative." *Id*. (citations omitted).

The Tenth Circuit in *Dixon* also considered the defendant's argument that it should "assess her actions from the perspective of a reasonable person in the same circumstances as she confronted—that is, through the lens of a 'reasonable person of ordinary firmness who [has been] abused for years' and who now suffers from PTSD." *Id*. at 1180. The Tenth Circuit rejected this

6

argument because it "finds no home" under the legal framework that the defendant "advanced as the proper basis for her duress defense": the Tenth Circuit's pattern jury instruction on duress (Tenth Circuit Criminal Pattern Jury Instruction 1.36). *Id*. The Tenth Circuit explained that because Pattern Instruction 1.36 requires a "well-grounded apprehension," a lack of a "reasonable, legal alternative," and a direct causal link that could have been "reasonably anticipated," "[t]he plain text of the instruction makes clear that the legal propriety of a defendant's assessment of, and response to, the circumstances that allegedly have subjected her to duress is determined by applying an *objective* lens." *Id*. at 1180–81 (emphasis added). In other words, "a defendant's subjective beliefs or perspectives are only relevant insofar as they are *objectively reasonable*." *Id*. at 1181 (emphasis added). The Tenth Circuit continued,

> under our pattern instruction the legal propriety of a defendant's assessment of, and response to, the circumstances that allegedly have subjected her to duress is determined by applying an objective lens—a lens that is closed to [the defendant's] evidence that would ostensibly demonstrate the *subjectively distorting* impact of PTSD on her ability to reasonably perceive the threat of harm and legal alternatives to avoid it.

*Id*. (emphasis in original). Thus, "the touchstone is still what is objectively reasonable—not what is reasonable only through the PTSD-distorted lens of [the defendant]." *Id*.

The Tenth Circuit then explained that Pattern Instruction 1.36 is not "purely objective" because its focus is on the perceptions and actions of "the defendant" rather than a "hypothetical reasonable person." *Id*. at 1182. As a result, "certain specific circumstances confronting that particular defendant may influence the factfinder's evaluation of whether her conduct is reasonable." *Id*. at 1183. For example,

> if the particular defendant is a quadriplegic, ordinarily it would not be a "reasonable, legal alternative" for that defendant to physically run away from an "unlawful and present, imminent and impending threat . . . of death or serious bodily injury" that was presented by an able-bodied assailant . . . but it might be reasonable for a defendant not afflicted by quadriplegia to do so.

7

*Id*. In acknowledging that Pattern Instruction 1.36 leaves room for the consideration of certain personal characteristics of the defendant, however, the Tenth Circuit drew a distinction between "external, concrete factors unique to [the defendant]" and "non-tangible psychological conditions that ostensibly alter the defendant's subjective beliefs or perceptions." *Id*. To justify drawing the line at "external, concrete factors," the Tenth Circuit explained that Pattern Instruction 1.36 and the objective approach to the duress defense reflect a "historical view that the characteristics of this particular 'excuse' for criminal conduct (i.e., the duress defense) call for the imposition of clearly defined and concrete boundaries to distinguish between those defendants who are worth of exculpation and all others." *Id*.

The Tenth Circuit in *Dixon* also found that several out-of-circuit cases cited by the defendant were unavailing because they relied not on Pattern Instruction 1.36 but on the MPC's formulation of duress, which requires the factfinder to consider the situation from the perspective of a "person of reasonable firmness" in the defendant's "situation." *Id*. at 1181. The Tenth Circuit explained that Pattern Instruction 1.36 is "patently different" from the MPC's formulation of duress because it does not instruct the jury to consider a person in the defendant's "situation." *Id*. at 1182. Given this difference, the Tenth Circuit did not read "Pattern Instruction 1.36 as offering the same or similar invitation to consider evidence relating to conditions like PTSD." *Id*. Finally, the Tenth Circuit declined to consider the defendant's arguments de novo under the MPC's formulation of the duress defense because the defendant failed to preserve that argument on appeal. *Id*. at 1184. It did note, however, that "even some language in the seemingly less restrictive MPC envisions that, while externally verifiable circumstances may be factored into the duress calculus, circumstances that are not so verifiable may not be." *Id*. at 1183 (citing commentary to the MPC that precludes evidence of a defendant's "temperament").

Following *Dixon*, at least one court in the District of New Mexico has rejected a defendant's similar request to introduce mental health evidence in support of a duress defense on the ground that such evidence would be irrelevant to the objective inquiry required by the defense. *See Overton*, 437 F. Supp. 3d at 1085–86 (finding that the defendant's attempt to introduce evidence of his "persecutory delusions" in support of a duress defense was "impermissible under *Dixon*" because his subjective beliefs and delusions were not "objectively reasonable" and did not give rise to a "well-grounded" apprehension of death or serious bodily injury).

### B. Application

As a preliminary matter, Mr. Thompson indicated in his response to the government's motion that he "intend[ed] to propose a modified [duress] instruction based on language from jury instructions and caselaw from other circuits." Doc. 211 at 4. The parties then submitted Requested Instruction No. 25, which appears to be the modified duress instruction to which Mr. Thompson was referring. Doc. 231 at 43. Requested Instruction No. 25 differs most noticeably from the Tenth Circuit's pattern jury instruction on duress (Pattern Instruction 1.36) at the second element of the defense. *See id*. Whereas Pattern Instruction 1.36 requires the defendant to prove that they had "no reasonable, legal alternative to violating the law," Requested Instruction No. 25 only requires Mr. Thompson to prove that he "*had a reasonable belief* that he had no reasonable, legal alternative to violating the law." *Id*. (emphasis added). The government objects to the requested instruction on the ground that it is a "misstatement of the law since duress in the Tenth Circuit is an objective standard" and it asks the Court to give Pattern Instruction 1.36 if the Court ultimately instructs the jury on duress. *Id*. at 6.

The Court agrees with the government that by requiring only a "reasonable belief" that there was no reasonable, legal alternative to violating the law, Requested Instruction No. 25

9

misstates the elements of a valid duress defense under the controlling caselaw. As the Tenth Circuit explained in *Dixon*, "[t]he *sine qua non* of any justification defense is a lack of a reasonable, lawful alternative." 901 F.3d at 1179. In support of her proposed duress defense, the defendant in *Dixon* argued that she "did not believe that the police could prevent [her stepfather] from hurting [her]." *Id*. In response, the Tenth Circuit remarked "this is not good enough" because the defendant "needed to show more than just a *subjective belief* that going to the police would be futile." *Id*. (emphasis added). Instead, she needed to put forth "specific reasons to doubt that the law enforcement alternative was viable." *Id*. (citing *Beckstrom*, 647 F.3d at 1017). Elsewhere, the Tenth Circuit has explained that the defense of necessity is "based on a real emergency" and "may be asserted only by a defendant who was confronted with a crisis as a personal danger." *United States v. Lewis*, 628 F.2d 1276, 1279 (10th Cir. 1980). The Tenth Circuit's caselaw accordingly makes clear that to make out a valid duress defense, the defendant must show that there was in fact no reasonable, legal alternative to violating the law, not only that they believed the same to be true. The Court will accordingly reject Requested Instruction No. 25 and will give Tenth Circuit Pattern Instruction 1.36 if it ultimately instructs the jury on duress unless presented with another alternative instruction that accurately reflects the Tenth Circuit's law on duress.

Turning to the instant motion, per Mr. Thompson's expert notice for Dr. Brovko, he seeks to introduce evidence about "the concept of suggestibility in the context of forensic psychology" as well as "how his history of substance abuse and other mental health disorders placed him at higher risk for and influenced his suggestibility when confronted with a particularly stressful or frightening situation." *Id*. He then intends to use this evidence to argue that "his mental health issues influenced his reaction to an already reasonable fear of harm" and that they "made him more susceptible to an otherwise objective fear." Doc. 211 at 3–4. A review of Dr. Brovko's forensic

evaluation reveals that she diagnosed Mr. Thompson with PTSD; Persistent Depressive Disorder (Dysthymia), Severe, With Persistent Major Depressive Episode; and several Substance Use Disorders. Brovko Evaluation at 19. Regarding the instant offense, Dr. Brovko writes that "[i]n conjunction with these mental health difficulties, data in this evaluation appears to suggest that [Mr. Thompson] was highly susceptible to coercion at the time of the offense, and he consistently reported feeling scared, intimidated, and pressured by his co-defendants at the time." *Id*. She continues that the instant offense "involved an intense and emotionally-arousing situation" and given Mr. Thompson's "difficulties in emotion regulation and distress tolerance," it is likely that he "lacked the appropriate skills needed to effectively cope with such a high level of negative emotion and stress." *Id*. Dr. Brovko also writes that given Mr. Thompson's "mental health difficulties, along with data suggesting he was intoxicated, high levels of negative affect (e.g., fear), low levels of distress tolerance, and lowered inhibition likely contributed to him engaging in impulsive and problematic behavior in response to this perceived threat." *Id*. at 20. Finally, Dr. Brovko notes that "it is possible that together with emotional dysregulation, distress intolerance, and lowered inhibition, elevated levels of compliance played a role in [Mr. Thompson's] behavior." *Id*. at 21.

The Court agrees with the government that this proposed mental health evidence is not relevant to Mr. Thompson's duress defense. Mr. Thompson's depression, his PTSD, and his other unique psychological characteristics, such as his difficulties with emotional regulation and distress tolerance, are simply not relevant to the elements of duress as defined by the Tenth Circuit: (1) whether Mr. Thompson was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself; (2) whether he had no reasonable, legal alternative to violating the law; and (3) whether

11

a direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm. Tenth Cir. Crim. Pattern Jury Instr. 1.36. In arguing that his mental health conditions "influenced his suggestibility" and made him "more susceptible to an otherwise objective fear," Mr. Thompson appears to be focusing on the second element of duress and whether he had a reasonable alternative to participating in the robbery. But as discussed above, *see supra* at 9–10, Mr. Thompson's subjective beliefs and his elevated levels of suggestibility are not relevant to whether there was in fact a reasonable, legal alternative to committing the crime. In the Tenth Circuit, a duress defense requires a "real emergency," not a perceived one. *See Lewis*, 628 F.2d at 1279.

Further, to the extent the proposed mental health evidence will involve a discussion of how Mr. Thompson's perceptions of and response to the facts of this case were influenced by his PTSD and his inability to regulate his emotions or effectively cope with stress, that is exactly the kind of subjective mental health evidence the Tenth Circuit prohibited in *Dixon* when it stated that the touchstone of a duress defense is "what is objectively reasonable—not what is reasonable only through the PTSD-distorted lens of [the defendant]." *Dixon*, 901 F.3d at 1181. Put another way, the proposed mental health evidence runs afoul of *Dixon* because it would "ostensibly demonstrate the *subjectively distorting* impact of PTSD on [Mr. Thompson's] ability to reasonably perceive the threat of harm and legal alternatives to avoid it." *Id.* (emphasis in original).

Perhaps recognizing this problem, Mr. Thompson attempts to distinguish *Dixon* by stating that he will not be arguing that his mental illness altered his perception of reality or caused him to act unreasonably; instead, he will argue that "his mental health issues influenced his reaction to an already reasonable fear of harm." Doc. 211 at 3. But if that is the case, the Court fails to see the relevance of the evidence. More specifically, the Court fails to understand how Mr. Thompson's

reaction to his fear is relevant to whether there was in fact a reasonable, legal alternative to participating in the robbery. Under *Dixon*, it is true that a defendant's personal characteristics can be relevant to whether they had a reasonable alternative to committing the crime. 901 F.3d at 1183. But *Dixon* makes clear that such evidence is limited to "external, concrete factors" that bear on the viability of legal alternatives, such as whether the defendant was able-bodied enough to run away. *Id*. Here, Mr. Thompson is not seeking to introduce evidence of a physical condition that prevented him from escaping or rendered him vulnerable to attack by his co-conspirators; he is seeking to introduce evidence of psychological conditions that made him more acquiescent to his co-conspirators' threats or demands. While the distinction between "external, concrete factors" and "non-tangible psychological conditions" might be questionable from a medical or scientific standpoint, that is the line the Tenth Circuit has drawn on this issue and the Court is in no position to question or disregard it. *See id*. And under the Tenth Circuit's controlling framework, evidence of Mr. Thompson's unique psychological reaction to his situation is not relevant to his duress defense.

Nor is the Court persuaded that the out-of-circuit cases addressing Battered Woman Syndrome require a different result. Mr. Thompson cites the Ninth Circuit case of *United States v. Lopez*, 913 F.3d 807, 821 (9th Cir. 2019). There, the Ninth Circuit held that it was reversible error for the district court to exclude expert testimony on Battered Woman Syndrome in support of the defendant's duress defense. *Id*. at 814. The court explained that such testimony can be relevant to a duress defense because it can show how a defendant's fear of harm was well-grounded given their past experiences of abuse. *Id*. at 821–22. Testimony on Battered Woman Syndrome can also be relevant to the question of whether the defendant had a reasonable alternative to committing the crime because it can show that the defendant's prior attempts to call the police as

13

an alternative were futile or led to violent retaliation by their abuser. *Id*. at 822. Similarly, in *United States v. Nwoye*, 824 F.3d 1129 (D.C. Cir. 2016), the D.C. Circuit held that evidence on Battered Woman Syndrome is relevant to duress because it shows how women in physically abusive relationships are often "hypervigilant to cues of impending danger and accurately perceive the seriousness of the situation before another person who had not been repeatedly abused might recognize the danger." *Id*. at 1137 (citation omitted). Such evidence also shows how "battered women who leave their abusers risk a retaliatory escalation in violence against themselves or those close to them." *Id*.

The problem with Mr. Thompson's argument is that the mental health evidence he seeks to introduce is not analogous to evidence about Battered Woman Syndrome. Mr. Thompson is not introducing Dr. Brovko's testimony to show how his fear of harm in this case was well-grounded based on his historical interactions with his codefendants or how he lacked a reasonable alternative to committing the robbery because, in the past, his efforts to seek help were futile or led to retaliation. To the contrary, Mr. Thompson told Dr. Brovko that he had just met his codefendants prior to the instant offense. Brovko Evaluation at 8. Because Mr. Thompson's proposed mental health evidence lacks the kind of historical basis in fact that courts have focused on in deeming evidence of Battered Woman Syndrome relevant to a duress defense, the comparison falls flat. And as noted above, the Tenth Circuit in *Dixon* distinguished several out-of-circuit cases analyzing the issue of duress, including the D.C. Circuit's decision in *Nwoye*, because those cases relied upon the MPC's formulation of duress, which the Tenth Circuit has yet to adopt or approve. *Dixon*, 901 F.3d at 1181.

For all of these reasons, the Court agrees with the government that Mr. Thompson's proposed mental health evidence is irrelevant to his duress defense. The evidence is therefore

inadmissible on that topic under Rule 402 of the Federal Rules of Evidence. Fed. R. Evid. 402.

**II.     The Proposed Mental Health Evidence Would Likely Run Afoul of the IDRA and the Tenth Circuit's Controlling Decision in *Brown*.**

The government also argues that the proposed mental health evidence would run afoul of the Insanity Defense Reform Act, or the IDRA, because it would tend to support the kind of diminished capacity or volitional defense that the Act eliminated when it narrowed the boundaries of the insanity defense in federal court. Doc. 193 at 4–7. Again, the Court agrees. As the Supreme Court explained in *Shannon v. United States*, 512 U.S. 573 (1994), "[t]he acquittal of John Hinckley on all charges stemming from his attempt on President Reagan's life, coupled with the ensuing public focus on the insanity defense, prompted Congress to undertake a comprehensive overhaul of the insanity defense as it operated in the federal courts. The result of this effort was the IDRA." *Id*. at 577. Prior to the IDRA, a defendant in Tenth Circuit could claim the insanity defense on two bases: if, as a result of mental disease or defect, he lacked substantial capacity to either (1) appreciate the wrongfulness of his conduct or (2) conform his conduct to the requirements of the law. *Brown*, 326 F.3d at 1146. In enacting the IDRA, Congress "eliminated the volitional branch" (i.e., the second basis) of the defense. *Id*. Specifically, the IDRA provides:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a). In addition to eliminating the volitional insanity defense in federal court, the broad language of the IDRA "eliminated all other affirmative defenses or excuses based upon mental disease or defect." *Brown*, 326 F.3d at 1146 (citation and italics omitted). Thus, the IDRA "bars the introduction of evidence of a defendant's mental disease or defect to demonstrate that he lacked substantial capacity to control his actions or reflect upon the consequences or nature of his

15

actions." *Id*. (citing *United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002).

In *Brown,* the Tenth Circuit analyzed the admissibility of expert witness testimony offered to show that a defendant lacked the requisite specific intent to commit the charged offense. 326 F.3d at 1148. The Tenth Circuit held that "psychological or psychiatric evidence that negates the essential element of specific intent can be admissible." *Id*. at 1147. It nevertheless found that in the case at bar, the proposed testimony—that the defendant "failed to conform his conduct to the requirements of the law and failed to make correct choices because of his mental condition"— did not properly go to the issue of specific intent. *Id*. at 1148. Instead, the testimony equated to "proof that [the defendant] lacked the capacity to control or reflect upon his conduct," which is inadmissible psychological or psychiatric evidence under the IDRA. *Id*. In so holding, the Tenth Circuit noted that because "there is a risk that such evidence will mislead or confuse the jury, the district courts must carefully scrutinize proposed psychiatric evidence to determine whether the evidence rests upon a legally acceptable theory for negating intent." *Id*. at 1147.

Here, Mr. Thompson seeks to introduce expert testimony through Dr. Brovko about "the concept of suggestibility in the context of forensic psychology" as well as "how [his] history of substance abuse and other mental health disorders placed him at higher risk for and influenced his suggestibility when confronted with a particularly stressful or frightening situation." Doc. 219 at 2. The Court agrees with the government that this kind of "suggestibility" evidence would likely run afoul of the IDRA and *Brown* because it would equate to evidence that Mr. Thompson "lacked substantial capacity to control his actions or reflect upon the consequences or nature of his actions." *Brown*, 326 F.3d at 1146. Put differently, by testifying about how Mr. Thompson's unique mental health conditions made it hard for him to resist the pressures he faced during the instant offense, *see* Brovko Evaluation at 19–21, Dr. Brovko would be testifying about how Mr. Thompson "failed

16

to conform his conduct to the requirements of the law and failed to make correct choices because of his mental condition[s]," which under *Brown* is not allowed. 326 F.3d at 1148.

In response, Mr. Thompson argues that the IDRA is inapplicable here because the proposed evidence goes to his duress defense, and the IDRA is "silent as to what types of evidence may be used to prove duress." Doc. 211 at 12. This response is unpersuasive for two reasons. First, as discussed at length above, the proposed mental health evidence is not properly relevant to Mr. Thompson's duress defense. *See supra* at 5–14. Second, the IDRA is not silent on what types of evidence can be used to prove duress: it specifically states that except for the insanity defense described therein, "[m]ental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a). By virtue of this broad language, the IDRA "eliminated all other affirmative defenses or excuses based upon mental disease or defect." *Brown*, 326 F.3d at 1146 (citation and italics omitted). The Court accordingly agrees with the government that the proposed mental health evidence would likely run afoul of the IDRA and the Tenth Circuit's decision in *Brown* if admitted.

### III. The Proposed Mental Health Evidence Would Violate Rule 403.

The government's final argument is that even if Mr. Thompson's proposed mental health evidence is relevant and otherwise admissible, its admission would violate Rule 403 of the Federal Rules of Evidence because it runs the risk of "confusing the issues surrounding the elements of a duress defense and misleading the jury into believing [Mr. Thompson] may be excused from his criminal conduct based on his mental struggles." Doc. 193 at 8. The Court agrees with this argument as well. For the reasons the Court has discussed, the law in the Tenth Circuit requires the jury to consider Mr. Thompson's duress defense through an objective lens. *See supra* at 5–8. And to the extent the jury can consider Mr. Thompson's personal characteristics, it can only consider "external, concrete factors" such as his size and physical vulnerability. *Id*. The proposed

mental health evidence presents a significant risk of "confusing the issues" and "misleading the jury" under Rule 403 because it would inject into the trial a considerable amount of information about Mr. Thompson's subjective beliefs and "non-tangible psychological conditions" which the Tenth Circuit has declared to be irrelevant to the duress inquiry. *See* Fed. R. Evid. 403. Such evidence would also create an unacceptable risk that the jury might find Mr. Thompson not guilty for the improper reason that he was unable to conform his actions to the requirements of the law, in violation of the IDRA. *See supra* at 14–17. The Court accordingly finds that the proposed mental health evidence is inadmissible under Rule 403 because its probative value is substantially outweighed by the risk that it would confuse the issues and mislead the jury. Fed. R. Evid. 403.

**IV. The Government's Request That the Court Prohibit Mr. Thompson From Introducing Any Mental Health Evidence For Any Reason Is Too Broad.**

While the Court agrees with the government that Mr. Thompson's proposed mental health evidence is irrelevant and inadmissible for all of the reasons set forth above, the government's motion goes further: it asks the Court to prohibit Mr. Thompson from introducing "*any evidence* regarding his mental health," including "testimony from [him] or his family about [his] mental health symptoms, diagnoses, or history." Doc. 193 at 1 (emphasis added). The Court cannot grant this part of the government's request because it is overbroad. As the government acknowledges in its reply, mental health evidence can be admissible to negate the element of specific intent. Doc. 241 at 8; *see also Brown*, 326 F.3d at 1147 ("psychological or psychiatric evidence that negates the essential element of specific intent can be admissible"). Although Mr. Thompson has not indicated a plan to introduce mental health evidence for that purpose, it would be improper for the Court to preemptively forbid him from doing so at this stage, especially because he is now facing a specific intent conspiracy offense. *See* Doc. 196 at 1–2 (charging Mr. Thompson with Conspiracy to Commit Hobbs Act Robbery); *see also United States v. Welch*, 198 F.R.D. 545, 550

(D. Utah 2001) (explaining that conspiracy offenses are "specific intent crimes" because they require "specific intent to advance the unlawful objective of the conspiracy").

## CONCLUSION

For the reasons set forth above, the government's Motion *In Limine* to Prohibit Introduction of Psychological or Mental Health Evidence at Trial [Doc. 193] is hereby **GRANTED IN PART** as described in this order.

DATED this 22nd day of June, 2021.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE