IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                  No. 19-CR-01610-MV-4

KARL THOMPSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Karl Thompson's Motion *in Limine* #2 to Exclude Irrelevant Evidence. Doc. 222. The government filed a response in opposition [Doc. 243] and Mr. Thompson filed a reply [Doc. 253]. Having considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken in part and will be **GRANTED IN PART** as described below.

### BACKGROUND

Mr. Thompson is charged in a three-count superseding indictment with Conspiracy to Interfere with Interstate Commerce by Robbery and Violence (Conspiracy to Commit Hobbs Act Robbery), in violation of 18 U.S.C. § 1951(a) (Count 1); Interference with Interstate Commerce by Robbery and Violence (Hobbs Act Robbery) and Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 1951(a) (Count 2); and Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i–iii) (Count 3). Doc. 196 at 1–2. The charges arose after Mr. Thompson and several codefendants allegedly robbed a Mustang convenience store with firearms on April 18, 2019. Doc. 222 at 1. After initially pleading guilty to an earlier information, Mr. Thompson withdrew his guilty plea [Doc. 173] and

a trial in the case is set for June 28, 2021 [Doc. 210].

In the instant motion, Mr. Thompson asks the Court to preclude the government from introducing at trial: (1) "the psychological, emotional effects and toll" that the robbery had on witnesses present in the store; (2) evidence of codefendant Kevin Marquez's hospital records from April 18, 2019; and (3) evidence that Mr. Marquez was suicidal in 2018. Doc. 222 at 2. Mr. Thompson argues that evidence about the psychological and emotional effects of the alleged robbery on witnesses is irrelevant under Rule 401 of the Federal Rules of Evidence and that, even if relevant, such evidence is more prejudicial than probative under Rule 403. *Id*. at 2–3. He also argues that evidence that "Mr. Marquez received medical treatment for a cut on his finger and that he may have been suicidal in 2018" should be excluded for the same reasons. *Id*. at 3.

In response, the government acknowledges that it "intends to introduce testimony from several witnesses about the emotional and psychological harm they suffered as a result of the robbery, and how it impacted their future behavior." Doc. 243 at 1. It argues that this evidence is admissible for several reasons. *Id*. First, the government argues that to prove Mr. Thompson guilty of Hobbs Act Robbery under 18 U.S.C. § 1951(b)(1), it has to prove beyond a reasonable doubt that he committed the alleged robbery "by means of actual or threatened force, or violence, or fear of injury, immediate or future." Doc. 243 at 2. Moreover, "there will not be evidence that [Mr. Thompson] used actual force to take the property of the Mustang store." *Id*. Instead, "he and his [co-]conspirators pointed firearms and threatened people inside the store." *Id*. As a result, testimony about the fear that witnesses experienced "is necessary to establish the means of accomplishing the robbery." *Id*. Second, the government argues that to prove Mr. Thompson guilty of Hobbs Act Robbery, it must also prove beyond a reasonable doubt that the robbery "interfered with interstate commerce." *Id*. (citing 18 U.S.C. § 1951). It argues that the "emotional

and psychological harm suffered by the customers at the Mustang store is relevant" to this element because the trauma the customers suffered "impacts whether those customers will ever return to the Mustang store, impacting its ability to engage in interstate commerce by potentially depleting its assets." *Id*. at 3–4. Finally, the government argues that the proposed evidence should not be excluded under Rule 403 because it is relevant and any prejudice resulting from its introduction will not be unfair. *Id*. at 4.

In reply, Mr. Thompson argues that the evidence of the witnesses' fear is unnecessary because the government will be able to show that his codefendants used actual force during the robbery, such as when one of his codefendants "discharged his firearm into the ceiling." Doc. 253 at 2. He also argues that evidence of the witnesses' ongoing trauma is needlessly cumulative because the government need only establish a "slight interference with interstate commerce" and they can do so through the video evidence in this case as well as evidence that the Mustang store "closed for a few hours after the alleged robbery." *Id*. at 4.

## DISCUSSION

The Court has considered the parties' briefs and the relevant law. It finds that the testimony of government witnesses about their fear during the alleged robbery is admissible because it is relevant to whether Mr. Thompson and/or his codefendants committed the robbery "by means of . . . fear of injury," one of the ways the government can prove Mr. Thompson's Hobbs Act Robbery charges under 18 U.S.C. § 1951(b)(1). The unfair prejudice resulting from such testimony will also be minimal because it should come as no shock to the jury that the customers in the store at the time of the armed robbery were afraid. The Court cannot say the same about testimony concerning the "emotional and psychological harm" suffered by the witnesses *after* the alleged robbery, however. Doc. 243 at 3–4. The probative value of that testimony is significantly less and

3

it carries a greater risk of unfairly prejudicing Mr. Thompson in the eyes of the jury. And if the government wants to ask its witnesses about whether they stopped going to the Mustang store as a result of the robbery, it can do so without getting into the traumatic impacts of the offense. The Court will accordingly prohibit the government from asking its witnesses about emotional and psychological harm they suffered as a result of the robbery under Rule 403. Finally, the Court will refrain from ruling on the potential evidence about Mr. Marquez's injury and psychological wellbeing in 2018 because it does not have enough information about that evidence and it is unclear that the government will even introduce it.

**I.    The Testimony of Government Witnesses About Their Fear During the Robbery is Relevant and Admissible.**

The Court first finds that the testimony of government witnesses about their fear during the robbery is relevant and admissible. The superseding indictment charges Mr. Thompson with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and Hobbs Act Robbery and Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 1951(a). Doc. 196 at 1–2. Under the Hobbs Act, "robbery" is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another by means of actual or threatened force, or violence, *or fear of injury, immediate or future*." 18 U.S.C. § 1951(b)(1) (emphasis added). Accordingly, to prove Mr. Thompson guilty of his Hobbs Act Robbery charges, the government has to prove that he and/or his coconspirators robbed the Mustang convenience store either through actual or threatened force, violence, or fear of injury. *See id*. While the Act gives the government several options, it must prove one of these specified means of accomplishing the robbery beyond a reasonable doubt. *See* Tenth Cir. Crim. Pattern Jury Instr. 2.70 (listing as an element that the defendant committed the robbery "by wrongful use of actual or threatened force, violence, or fear).

Because "fear of injury" is one the means by which Mr. Thompson and his co-conspirators

4

could have committed the alleged Hobbs Act Robbery, testimony by the government's witnesses on that topic is plainly relevant. Evidence is relevant under Rule 401 of the Federal Rules of Evidence if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, testimony by the customers and/or employees in the store about the fear they experienced during the robbery will make a fact of consequence more probable because it will make it more probable that Mr. Thompson and his co-conspirators used a prohibited means—fear of injury—to accomplish the alleged robbery.

Mr. Thompson argues in his reply that the government should not be able to elicit testimony from its witnesses about their fear during the robbery because it can prove this element through other means, such as through his codefendants' use of "actual or threatened force." Doc. 253 at 2. It is true that under *Old Chief v. United States*, 529 U.S. 172 (1997), a court considering the probative value of a piece of evidence for the purposes of Rule 403 should consider available evidentiary alternatives. *See id*. at 182–83. But *Old Chief* makes clear that this approach only applies when the alternative pieces of evidence go "to the same point." *Id*. at 183. Mr. Thompson's argument here goes much further: he is asking the Court to dictate the theory that the government will be allowed to use to establish his guilt on one of the elements it has to prove beyond a reasonable doubt. The Court cannot and will not dictate the government's case in this way, especially because its evidence on the "fear of injury" theory might be more viable than its evidence on the other theories. The government argues, for example, that there is no evidence that Mr. Thompson or his codefendants used actual force to accomplish the robbery. Doc. 243 at 2. As an alternative, the government is entitled to prove that the defendants accomplished the robbery by instilling a fear of injury in the customers and employees present in the store. *See* 18 U.S.C.

§ 1951(b)(1).

Nor does the Court believe that such evidence would be significantly more prejudicial than probative under Rule 403. *See* Fed. R. Evid. 403. There is undoubtedly a risk that the jury's emotions could be inflamed by witnesses' harrowing testimony about what they went through during the robbery. But the jury will already be seeing other evidence to that effect, including surveillance video from the store that shows customers fleeing for safety and cowering in place. *See* Doc. 222 at 1 (referring to the fact that the "alleged robbery was captured on surveillance video" and acknowledging that some of the testifying witnesses will be the individuals captured on video). It will therefore come as no surprise to the jury to hear that the same individuals were afraid while the robbery was taking place. And while the subjective fear of victims and witnesses to a crime might normally be inadmissible under Rule 403 because it is irrelevant, the situation here is different due to the unique "fear of injury" aspect of Hobbs Act Robbery. *See supra* at 4–5.

The Court will therefore allow the government's witnesses who were present in the Mustang store to testify about their fear during the robbery. The Court notes, however, this ruling is preliminary and will be subject to reconsideration if the evidence at trial becomes needlessly cumulative or unfairly prejudicial under Rule 403. *See* Fed. R. Evid. 403.

II.  **The Testimony of Government Witnesses About the Emotional and Psychological Impacts They Suffered After the Robbery Is Inadmissible Under Rule 403.**

In addition to testimony about the fear its witnesses suffered *during* the alleged robbery, the government seeks to introduce evidence about the "emotional and psychological harm they suffered *as a result of the robbery*, and how it impacted their future behavior." Doc. 243 at 1 (emphasis added). The Court finds that while such evidence would be potentially relevant, its probative value is minimal and is substantially outweighed by the risk of unfair prejudice under Rule 403. Fed R. Evid. 403.

The government argues that evidence about the emotional and psychological harm its witnesses suffered as a result of the robbery is relevant because that trauma "impacts whether those customers will even return to the Mustang store, impacting its ability to engage in interstate commerce by potentially depleting its assets." Doc. 243 at 3–4. The government is correct that evidence about the impact of the robbery on the Mustang store's customer base is relevant to Mr. Thompson's Hobbs Act Robbery charges. To prove Mr. Thompson guilty of those charges, the government must prove beyond a reasonable doubt that "as a result of [his] actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree." Tenth Cir. Crim. Pattern Jury Instr. 2.70. Although the government need only prove a "*de minimis* effect on commerce," *United States v. Zeigler*, 19 F.3d 486, 489 (10th Cir. 1994), it must still establish this element beyond a reasonable doubt. And a legitimate way to show a robbery's effect on interstate commerce is to show that it stopped customers from patronizing the targeted business. *See United States v. Nguyen*, 155 F.3d 1219, 1224–25 (10th Cir. 1998) (approving hypothetical evidence about loyal customers who were "too frightened to ever return" to a restaurant that had been robbed).

It would therefore be relevant and appropriate for the government to ask witnesses who were present during the robbery whether, as a result of the robbery, they stopped patronizing the Mustang store or did so less frequently than before. The government will be permitted to ask such questions in addition to the evidence that it will presumably put on about the commercial interference the store suffered by being closed for several hours following the robbery. Doc. 253 at 4. What the Court does not feel is relevant, however, is evidence about the nature and extent of any emotional and psychological harm its witnesses suffered *after* the robbery, as well as evidence about any adverse impacts the robbery had on the witnesses' lives. The government does not need

7

to delve into those topics to establish the relevant impact on interstate commerce—it can simply ask its witnesses whether they stopped going to the Mustang store, and if so whether that was a result of the robbery. If in the course of answering those narrow questions the witnesses discuss the fact that they are too afraid or traumatized to return to the store, that would likely be permissible too. *See Nguyen*, 155 F.3d at 1224–25. But any additional evidence about the witnesses' emotional and/or psychological pain and suffering, or any other adverse impacts on their lives, would be irrelevant, needlessly cumulative, and unfairly prejudicial under Rule 403 because it would risk improperly inflaming the jury's emotions in a way that could lead it to convict Mr. Thompson not because he is guilty of the crimes charged but because the witnesses deserve retribution for their pain. *See United States v. Caraway*, 534 F.3d 1290, 301 (10th Cir. 2008) (evidence is unfairly prejudicial under Rule 403 when it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). The probative value of such evidence is substantially outweighed by the risk of unfair prejudice and it is therefore inadmissible under Rule 403. Fed. R. Evid. 403. And to the extent the government will ask its witnesses the permissible questions about whether they have returned to the Mustang store since the robbery, the Court expects the government to do so carefully in order to avoid getting into the testimony excluded under this order.

### III. The Court Will Reserve Ruling on The Potential Evidence About Mr. Marquez.

Finally, Mr. Thompson asks the Court to exclude evidence of codefendant Kevin Marquez's hospital records from April 18, 2019 and evidence that Mr. Marquez was suicidal in 2018. Doc. 222 at 2. The government did not address these arguments in its response and there is no indication from the government's exhibit list that it plans to introduce records related to Mr. Marquez's hospitalization following the robbery or his mental health struggles in 2018. *See* Doc.

8

188. While the Court does not see how this evidence would be relevant, it does not have enough information to make a pretrial ruling on the evidence's admissibility at this time. The Court will therefore reserve ruling on this issue. If the government moves to introduce such evidence at trial, Mr. Thompson can renew his objection and the Court will consider it at that time in the context of the other evidence that has been admitted.

## CONCLUSION

For the reasons set forth above, Mr. Thompson's Motion *in Limine* #2 to Exclude Irrelevant Evidence [Doc. 222] is hereby **GRANTED IN PART**.

DATED this 25th day of June, 2021.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE