IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                                 Crim. No. 19-1610-MV-4

KARL THOMPSON,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on the defendant Karl Thompson's Emergency Motion to Dismiss Superseding Indictment for Prosecutorial Misconduct Before the Grand Jury on April 12, 2021. Doc. 272. The United States filed a response in opposition [Doc. 278] and Mr. Thompson filed a reply [Doc. 280]. Having carefully considered the motion, relevant law, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be **DENIED**.

### BACKGROUND

On April 18, 2019, Mr. Thompson and three other individuals allegedly committed an armed robbery of liquor items from a Mustang Convenience store in Vanderwagen, New Mexico. Doc. 200 at 2. On June 12, 2019, a federal grand jury returned an indictment charging Mr. Thompson, Julian C. Silversmith, Aurelius Jamal Eddie, and Kevin Marquez with one count of Interference with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. §§ 1951(a) and 2, and one count of Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and 2. Doc. 13.

On December 13, 2019, Mr. Thompson pled guilty to an information [Doc. 82] charging

1

him with one count of Interference with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. §§ 1951(a) and 2, and one count of Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i), pursuant to a binding Rule 11(c)(1)(C) plea agreement. Doc. 85. As part of the plea agreement, Mr. Thompson made a written admission of facts detailing his role in the robbery. *Id.* at ¶ 9. The parties agreed that a specific sentence of five to ten years of imprisonment was appropriate. *Id.* at ¶ 11(a).

Mr. Thompson's sentencing hearing began on January 29, 2021. Doc. 166. During the hearing, Mr. Thompson's attorney asked for a brief recess to consult with her client. *Id*. at 8:25-9:1. Following the recess, Mr. Thompson asked to withdraw his guilty plea and indicated that he wanted to pursue a duress defense. *Id.* at 10:2-12. The government opposed this request. *Id.* at 10:15-25. After hearing arguments from both the government and Mr. Thompson, the Court continued the sentencing hearing. *Id.* at 25:7-10. Thereafter, on March 10, 2021, the Court held a second hearing during which it rejected the plea agreement. Doc. 173. After the Court rejected Mr. Thompson's plea agreement, he withdrew his plea of guilty pursuant to Rule 11(c)(5) of the Federal Rules of Criminal Procedure. *Id*. at 9:5-15.

On April 22, 2021, a federal grand jury returned a superseding indictment charging Mr. Thompson with the same offenses as the first indictment and an additional charge of Conspiracy to Interfere with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. § 1951(a). Doc. 196. During its grand jury presentation, the government called Federal Bureau of Investigation (FBI) Special Agent Sean Cave to testify about the robbery. Doc. 272 at 2; Doc. 272 Ex. A at 8. The government then introduced the factual basis from Mr. Thompson's plea agreement as substantive evidence against him. Doc. 272 at 2-3; Doc. 272 Ex. A at 14-15. In a subsequent motion *in limine*, the government asked this Court to rule that Mr. Thompson's

admissions in his plea agreement are admissible pursuant to the plea agreement's waiver of Rule 410 of the Federal Rules of Evidence, which normally prohibits the use of such admissions at trial. Doc. 192. The Court denied this motion, explaining that it had rejected the plea agreement "acting on its own" and the Rule 410 waiver was therefore unenforceable under the terms of the agreement. Doc. 281.

In the instant motion, Mr. Thompson asserts that the government's presentation of the factual basis of his withdrawn guilty plea to the grand jury was a violation of Rule 410 and his right to Due Process. Doc. 272 at 3. In response, the government argues that there was no Rule 410 violation because that rule is inapplicable to grand jury proceedings and that, in any event, it did not commit any knowing misconduct that rises to the level of "flagrant error" that would warrant dismissing the indictment. Doc. 278 at 2.

## DISCUSSION

In support of his motion, Mr. Thompson argues that a prosecutor has an obligation under the Fifth Amendment to preserve the fairness, impartiality, and lack of bias of the grand jury. Doc. 278 at 3. He points to out-of-circuit cases from the 1970s in which the Second, Third, and Ninth Circuits each ruled that the government had "controlled or misled the grand jury." *Id.* at 4-5. He argues that here, the government "usurped the grand jury's role and improperly presented evidence which the prosecutor knew was inadmissible as the factual basis in the December 13, 2019, plea could not be used against [him] as the plea was rejected by the Court." *Id.* at 6. Mr. Thompson asserts that the prosecutor flagrantly disregarded that the plea agreement was no longer enforceable, and that this "amounts to misconduct and was designed to prejudice Mr. Thompson before the grand jury." *Id.* He argues that under *Bank of Nova Scotia v. United States*, an indictment may be dismissed for prosecutorial misconduct upon a showing of "flagrant error" that

3

significantly infringes on the ability of the grand jury to exercise independent judgment and actually prejudices the defendant. *Id.* (citing *Bank of Nova Scotia*, 487 U.S. 250, 255-60 (1988)). Mr. Thompson urges the Court to use its supervisory authority to dismiss the indictment. Doc. 272 at 4-5 (citing *United States v. Isgro*, 974 F.2d 1091, 1094-99 (9th Cir. 1992) (explaining that the supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice")).

In response, the government argues that there was no prosecutorial misconduct in this case. It asserts that there was no violation of Rule 410 because that rule does not apply to grand jury proceedings. Doc. 278 at 2. Next, the government argues that even if it *was* misconduct for the prosecutor to present the testimony about Mr. Thompson's plea admission, dismissal is not warranted because there was ample other evidence of his involvement in the robbery to establish probable cause. *Id.* at 3. There was no "flagrant violation," the government argues, and other evidence presented to the grand jury to support the indictment shows that the grand jury was not "overreached or deceived in some significant way." *Id.* (citing *United States v. Pino*, 708 F.2d 523 530 (10th Cir. 1983).

The Court agrees with the government that the use of Mr. Thompson's plea admissions to obtain a superseding indictment against him was permissible under the controlling law. Mr. Thompson's request that the Court dismiss the superseding indictment is premised on the fact that the prosecution used his plea admissions in presenting to the grand jury, even though the Court had rejected the plea agreement. Doc. 272 at 7. Thus, he argues, the plea agreement's waiver of Rule 410 is unenforceable, as the Court held in ruling on another motion *in limine* [Doc. 281], and the government's use of the plea admissions before the grand jury was improper. *Id.* This

4

argument is flawed.  The Court found that the Rule 410 waiver contained in the plea agreement was unenforceable because it had rejected the plea agreement "acting on its own," and therefore, under Rule 410, Mr. Thompson's plea admissions could not be used at trial—either in the government's case-in-chief or for impeachment purposes.  Doc. 281.  It does not follow, however, that the plea admissions cannot be used during subsequent grand jury proceedings because the rules of evidence *do not apply to grand jury proceedings*.  Specifically, Rule 101 of the Federal Rules of Evidence indicates that "[t]he specific courts and proceedings to which the rules apply, along with exceptions, are set out in Rule 1101."  Fed. R. Evid. 101.  Rule 1101, in turn, reads:

> **Applicability of the Rules**
>
> **(d) Exceptions.** These rules—except for those on privilege—do not apply to the following: . . .
>
> (2) grand-jury proceedings;

Fed. R. Evid. 1101(d)(2).  As a result, Rule 410 never protected Mr. Thompson's plea admissions from being used in a grand jury setting, and the fact that the government used his plea admissions in this way did not violate the Rule.  The fact that his Rule 410 waiver is now unenforceable does not change that, because Rule 410 never provided him such protection in the first place.  *See* Fed. R. Evid. 1101(d)(2).

Mr. Thompson's argument also ignores the fact that, under well-established Supreme Court precedent, the grand jury is permitted to consider information from a wide range of sources, even if that information is deficient from an evidentiary standpoint or even constitutionally suspect.  In *United States v. Calandra*, 414 U.S. 338, 344 (1974), for example, the Supreme Court declared: "[T]he validity of an indictment is not affected by the character of the evidence considered.  Thus, an indictment valid on its face is *not subject to challenge on the ground that the grand jury acted*

5

*on the basis of inadequate or incompetent evidence . . .* or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination." *Id.* (internal citations omitted) (emphasis added). In addition to information obtained in violation of the Fifth Amendment, the Court in *Calandra* held that the grand jury could consider information obtained in violation of the Fourth Amendment as well. *See id.* at 354-55. And in *United States v. Costello*, 350 U.S. 359 (1956), the Supreme Court held that a grand jury indictment cannot be challenged on the basis that it was obtained entirely through the use of hearsay. The Supreme Court has thus "emphasized on numerous occasions that many of the rules and restrictions that apply at a trial do not apply in grand jury proceedings," and "[t]his is especially true of evidentiary restrictions." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 298 (1991). If the rules of trial were strictly observed during the grand jury's preliminary investigation, there would be "interminable delay." *Costello*, 350 U.S. at 364 (1956).

Mr. Thompson nevertheless argues that "while it is true that the rules of evidence generally do not apply in grand jury proceedings," because the presentation of evidence before a grand jury was misleading and erroneous, it resulted in "prosecutorial impairment of the grand jury's independent role." Doc. 280 at 2. But this assertion ignores the fact that there was *not* any misleading or erroneous evidence presented to the grand jury. Under the Supreme Court's precedent and the Federal Rules of Evidence, Mr. Thompson's plea admissions, while not admissible during trial, *are* permitted to be presented during grand jury proceedings. *Calandra*, 414 U.S. at 344; Fed. R. Evid. 1101(d)(2). The Court need not, and indeed cannot, use its supervisory powers to dismiss this legally valid indictment. *See Hudson*, 545 F.2d at 726. Nor can the Court find that there was government misconduct in this matter, as the prosecution's presentation of the plea admissions was proper and therefore could not have "biased the grand

6

jury" or "impaired its ability to review the case against the accused impartially and independently." *United States v. Hillman*, 642 F.3d 929, 933-34 (10th Cir. 2011) (citing Grand Jury Law & Prac. § 9:2 (2d ed.)).

Finally, even if the Court were to find that it was improper for the government to use Mr. Thompson's plea admissions in this way, a district court cannot generally use its supervisory power to dismiss a legally valid indictment. *See United States v. Hudson*, 545 F.2d 724, 726 (10th Cir. 1976) (holding that a district court lacks the "inherent power" to dismiss an indictment based on the defendant's poor health). As Mr. Thompson points out, a district court may use its supervisory authority to dismiss an indictment when prosecutorial misconduct influenced the grand jury's decision *and* caused prejudice to the defendant. *See Bank of Nova Scotia*, 487 U.S. at 254, 256 (1988) ("[D]ismissal of the indictment is appropriate only if it is established that the violation *substantially* influenced the grand jury's decision to indict, or if there is *grave doubt* that the decision to indict was free from the substantial influence of such violations.") (quotations omitted) (emphasis added). But even with this standard, "the common theme of the cases is that prosecutorial misconduct alone is not a valid reason to dismiss an indictment." *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia*, 487 U.S. at 264. Here, the Court believes that even if it was improper for the government to introduce Mr. Thompson's plea admissions to the grand jury, doing so did not rise to the level of misconduct and prejudice required to dismiss the otherwise valid indictment. In order for prosecutorial misconduct to warrant dismissal, the violation must be "flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." *Pino*, 708 F.2d at 530 (in which a prosecutor's use of threats and a suppressed statement to confront a witness before the grand jury was insufficient to constitute "flagrant misconduct"). A high level of government misconduct is simply not present in this case to warrant dismissal of the superseding indictment.

## CONCLUSION

For the reasons set forth above, the Court concludes that the government did not commit misconduct in using Mr. Thompson's plea admissions before the grand jury because Rule 410 of the Federal Rules of Evidence does not apply to grand jury proceedings. Further, to the extent the government did act improperly, any misconduct did not rise to the high level needed to dismiss an otherwise valid indictment.

**IT IS THEREFORE ORDERED** that Mr. Thompson's Emergency Motion to Dismiss Superseding Indictment for Prosecutorial Misconduct Before the Grand Jury on April 12, 2021. [Doc. 272] is **DENIED**.

ENTERED this 25th day of June 2021.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE