# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                      No. 19-CR-01610-MV-4

KARL THOMPSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Karl Thompson's Proposed Amended Jury Instruction on Duress and Memorandum in Support of Proposed Amended Jury Instruction [Doc. 283]. The government filed a response in opposition [Doc. 295] and Mr. Thompson filed a memorandum in further support [Doc. 296]. Having considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be denied.

## BACKGROUND

Mr. Thompson is charged in a three-count superseding indictment with Conspiracy to Interfere with Interstate Commerce by Robbery and Violence (Conspiracy to Commit Hobbs Act Robbery), in violation of 18 U.S.C. § 1951(a); Interference with Interstate Commerce by Robbery and Violence (Hobbs Act Robbery) and Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 1951(a); and Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i–iii). After initially pleading guilty to an earlier information, Mr. Thompson withdrew his guilty plea [Doc. 173] and a trial in the case began on June 28, 2021.

On May 18, 2021, Mr. Thompson submitted a proposed jury instruction on duress, which

modified the relevant Tenth Circuit pattern instruction. Doc. 231 at 43. Specifically, while Pattern Instruction 1.36 requires the defendant to prove that he or she had "no reasonable, legal alternative to violating the law," Requested Instruction No. 25 would have required Mr. Thompson to prove only that he "*had a reasonable belief* that he had no reasonable, legal alternative to violating the law." *Id*. (emphasis added). The government objected to the requested instruction on the ground that it was a "misstatement of the law since duress in the Tenth Circuit is an objective standard" and it asked that the Court give Pattern Instruction 1.36 if the Court ultimately instructs the jury on duress. *Id*. at 6. In a Memorandum Opinion and Order entered on June 22, 2021, the Court agreed with the government that, by requiring only a "reasonable belief" that there was no reasonable, legal alternative to violating the law, Requested Instruction No. 25 misstated the elements of a valid duress defense under the controlling caselaw. Doc. 282 at 9-10. Accordingly, the Court rejected Requested Instruction No. 25, and indicated that, if it "ultimately instructs the jury on duress, unless presented with another alternative instruction that accurately reflects the Tenth Circuit's law on duress," it will use the Tenth Circuit pattern instruction. *Id.* at 10.

On the instant motion, Mr. Thompson submits a second proposed amended jury instruction on duress, which again modifies the Tenth Circuit pattern instruction. Doc. 283 Ex. 1. The government opposes Mr. Thompson's proposed modifications to Pattern Instruction 1.36.

## DISCUSSION

Mr. Thompson seeks to add two provisions to the Tenth Circuit pattern instruction on duress. The government objects to the addition of these provisions. For the reasons set forth herein, the Court agrees with the government that neither of Mr. Thompson's proposed provisions comports with controlling law.

I.   Instructing the Jury on the Burden of Proof

Mr. Thompson first argues that, because "robbery and conspiracy to commit robbery are specific intent crimes, the jury must be instructed that the government bears the burden, beyond a reasonable doubt, to disprove Mr. Thompson's duress defense." Doc. 283 at 3. This request, however, is "contrary to [Tenth] Circuit precedent." *Dixon v. United States (Dixon I)*, 548 U.S. 1, 5 (2006). As this Court has explained, "[d]uress is an affirmative defense to criminal liability." Doc. 282 at 5 (citing *United States v. Overton*, 437 F. Supp. 3d 1078, 1084 (D.N.M. 2020)). And the Tenth Circuit has made clear that a defendant "must prove his claimed defenses by a preponderance of the evidence. The government is not required to disprove them." *United States v. Al-Rekabi*, 454 F.3d 1113, 1122 (10th Cir. 2006). As written, the Tenth Circuit pattern instruction on duress reflects this standard, instructing the jury that, if it "finds the defendant committed the crime as charged, his actions are justified by duress or coercion only if [it] find[s] that he has proven" three elements "by a preponderance of the evidence." Tenth Cir. Crim. Pattern Jury Instr. 1.36 (2021). Despite this precedent, Mr. Thompson argues that both the Supreme Court's decision in *Dixon I* and "historical" out-of-circuit cases support his contention that "the jury must be instructed that the government bears the burden, beyond a reasonable doubt, to disprove Mr. Thompson's duress defense." Doc. 296 at 8. The Court cannot agree.

First, as Mr. Thompson appears to concede, in *Dixon I*, the Court rejected the very argument raised by Mr. Thompson here, namely, that the trial court should have instructed the jury that the government was required to disprove beyond a reasonable doubt Ms. Dixon's duress. *Dixon I*, 548 U.S. at 5. Consistent with Fifth Circuit precedent, the trial court had instructed the jury that Ms. Dixon had "the burden of proof to establish the defense of duress by a preponderance of the evidence." *Id.* Ms. Dixon argued that "federal law requires the Government to bear the

3

burden of disproving her defense beyond a reasonable doubt and that the trial court's erroneous instruction on this point entitle[d] her to a new trial." *Id.* In support of this argument, Ms. Dixon contended, as does Mr. Thompson here, "that her defense controverted the *mens rea* required for conviction," and thus that the Due Process Clause required "the government to retain the burden of persuasion on that element." *Id.*

The Court rejected Ms. Dixon's argument that "she [could not] have formed the necessary *mens rea* for [her] crimes because she did not freely choose to commit the acts in question." *Id.* at 6. The Court explained that, even assuming "that petitioner's will was overborne by the threats made against her and her daughters, she still *knew* that she was making false statements and *knew* that she was breaking the law by buying a firearm." *Id.* at 7 (emphasis in original). "The duress defense," the Court explained, "may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself." *Id.* In other words, "the defense of duress does not negate a defendant's criminal state of mind," but "instead, it allows the defendant to avoid liability because coercive conditions or necessity negate[] a conclusion of guilt even though the necessary *mens rea* was present." *Id.*

In a footnote, the Court indicated that "there may be crimes where the nature of the *mens rea* would require the Government to disprove the existence of duress beyond a reasonable doubt." *Id.* at 7 n.4. The Supreme Court cited to a treatise for the proposition that "some common-law crimes require that the crime be done 'maliciously,'" and to Black's Law Dictionary, which defines malice as "the intent, without justification or excuse, to commit a wrongful act." *Id.* As the government aptly observes, the Supreme Court's suggestion that the government would need to disprove duress where the crime charged requires a *mens rea* of malice makes sense, because malice requires an intent, *without justification or excuse*, and duress is precisely that: a

4

justification or excuse for a crime. Doc. 295 at 2.

Mr. Thompson reads this footnote as an "acknowledge[ment] that where the offense involves proof of specific intent, the government would be required to disprove, beyond a reasonable doubt, the existence of coercion." Doc. 296 at 7. But nothing in the footnote suggests that the Supreme Court envisioned that all "specific intent crimes" – a term used liberally by Mr. Thompson but nowhere defined or supported by the actual language in *Dixon I* – would fall into the exception to the general rule that duress does not cause a defendant "to somehow lose his mental capacity to commit the crime in question." *Dixon I*, 548 U.S. at 7 n.5. Indeed, Mr. Thompson fails to explain how any evidence of duress that he may adduce at trial would "contradict or tend to disprove any element" of the crimes with which he is charged. *Id*. at 11. Apart from labeling them as "specific intent crimes," Mr. Thompson has provided no basis for the Court to conclude that the crimes with which he is charged would, like crimes of malice, fall outside of the normal spectrum of crimes where duress does not controvert any of the elements of the offense itself. Thus, this is not the sort of case where the defense of duress would "negate" Mr. Thompson's "criminal state of mind." *Id.* at 7.

In short, there is nothing in the text of the footnote or elsewhere in the *Dixon I* decision to support Mr. Thompson's reading of the footnote as announcing a different standard for all "specific intent crimes" that would somehow exempt him from the usual burden of proving by a preponderance of the evidence his duress defense. Accordingly, the Tenth Circuit pattern instruction properly places the burden on Mr. Thompson "to establish the existence of duress by a preponderance of the evidence" and, being "bound by Circuit precedent," it would be improper for the Court to instruct the jury otherwise. *Id*. at 8, 4.

The *Dixon I* decision also forecloses Mr. Thompson's additional argument that "[c]ourts

have historically required the government to disprove, beyond a reasonable doubt, the existence of duress." Doc. 296 at 8. In rejecting a similar argument by Ms. Dixon, the Court stated that [t]he long-established common-law rule is that the burden of proving duress rests on the defendant." *Dixon I*, 548 U.S. at 15. The Court explained that, "at common law, the burden of proving affirmative defenses . . . rested on the defendant," and that "[t]his common-law rule accords with the general evidentiary rule that the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party." *Id.* at 8. And in the specific context of duress, the Court further explained, "it accords with the doctrine that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." *Id.* at 9.

While Mr. Thompson cites to four out-of-circuit cases decided before *Dixon I* to support his argument regarding a contrary history of the law, *see* Doc. 296 at 8, to the extent that those cases are inconsistent with the holding of *Dixon I* and Tenth Circuit precedent, they are of no persuasive value here. Indeed, the Court in *Dixon I* specifically rejected the contention that one of the cases cited by Mr. Thompson, *Johnson v. United States*, 291 F.2d 150 (8th Cir. 1961), stands "for the proposition that it has been well established in federal law that the Government bears the burden of disproving duress beyond a reasonable doubt." *Dixon I*, 548 U.S. at 14 (explaining that the *Johnson* court's statement that "there [was] no burden upon the defendant to prove his defense of coercion," was "best understood in context as a corollary to the by-then-unremarkable proposition that the burden of proof rests upon the Government to prove the defendant's guilt beyond a reasonable doubt.").

Accordingly, Mr. Thompson has failed to provide the Court with any proper authority on which to eschew Tenth Circuit law or the Tenth Circuit pattern instruction, which, in placing the

6

burden on Mr. Thompson to establish the existence of duress by a preponderance of the evidence, neither "run[s] afoul of the Due Process Clause" nor runs counter to "the long-established common-law rule." *Id.* at 8, 15. The Court thus will not modify the Tenth Circuit pattern instruction to shift to the government the burden of disproving Mr. Thompson's duress.

II.     Adding an Element Regarding a Person *in the Defendant's Situation*

Mr. Thompson next argues that the Court should include an additional element in its duress defense instruction directing the jury to consider whether "a person *in the defendant's situation* would have been unable to resist." Doc. 283-1 (emphasis added). As Mr. Thompson recognizes, in *United States v. Dixon (Dixon II)*, the Tenth Circuit held that "[t]he plain text" of its pattern instruction on duress "makes clear that the legal propriety of a defendant's assessment of, and response to, the circumstances that allegedly have subjected her to duress is determined by applying *an objective lens* – that is, a defendant's subjective beliefs or perspectives are only relevant insofar as they are objectively reasonable." 901 F.3d 1170, 1180-81 (10th Cir. 2018) (emphasis added). Mr. Thompson nonetheless argues that *Dixon II* left room for the jury "to consider a reasonable person in the defendant's particular situation." Doc. 296 at 3. The Court cannot agree.

In support of his reading of *Dixon II*, Mr. Thompson first points to a passage where the Court qualifies its holding that, "[u]nder our pattern instruction, the touchstone is [] what is objectively reasonable," as follows:

> This is not to say that the linguistic formulation of Pattern Instruction 1.36 is purely objective. The instruction's focus is on the perceptions and actions of "the defendant," not on those of some hypothetical reasonable person. The formulation of the pattern instruction does demand, however, that those perceptions and actions be reasonable. And because the focus is on a particular defendant (rather than a hypothetical one), certain specific circumstances confronting that particular defendant may influence the fact finder's evaluation of whether her conduct is reasonable.

7

*Dixon II*, 901 F.3d at 1182-83. After stating that "certain specific circumstances" unique to a defendant might be relevant, the Court went on to clarify that statement as follows:

> The fact, however, that the linguistic formulation of Pattern Instruction 1.36 contemplates consideration of whether the objective reasonableness of a particular defendant's conduct has been materially influenced by external, concrete factors unique to her does not mean that this language similarly contemplates that the factfinder should take into account whether the objective reasonableness of the defendant's conduct has been influenced by non-tangible psychological conditions that ostensibly alter the defendant's subjective beliefs or perceptions.

*Id.* at 1183. Accordingly, under *Dixon II,* while a defendant's personal characteristics may be relevant to whether he or she had a reasonable alternative to committing a crime, such evidence is limited to "external, concrete factors" that bear on the viability of legal alternatives, such as whether the defendant was able-bodied enough to run away. *Id.* (citing, as an example, a quadriplegic for whom it ordinarily would not be a reasonable, legal alternative to physically run away).

In arguing that he is entitled to an instruction allowing the jury to consider a person *in his situation* in evaluating his duress defense, Mr. Thompson makes no mention of the distinction drawn by the Tenth Circuit between "external, concrete factors" that may be considered in the context of a duress defense and perception-altering "non-tangible psychological conditions" that are foreclosed from consideration. In fact, he has consistently argued that his mental health issues made him more acquiescent to his co-conspirators' threats or demands. *See* Doc. 282 at 13. *Dixon II* makes clear that Mr. Thompson's unique *psychological* reaction is not relevant to his duress defense. On the other hand, to the extent that Mr. Thompson seeks to introduce evidence of "external, concrete factors," such as a *physical* condition that prevented him from escaping or rendered him vulnerable to attack by his co-conspirators, that would be permissible under *Dixon II*.

8

Nonetheless, nothing in the passage of *Dixon II* cited by Mr. Thompson suggests that he is entitled to a modification of the pattern instruction. To the contrary, that passage makes clear that the pattern instruction, *as written*, allows for the jury to consider "certain specific circumstances confronting that particular defendant." *Dixon II*, 901 F.3d at 1183. And the Court specifically reiterated that "*the linguistic formulation* of Pattern Instruction 1.36 contemplates consideration of whether the objective reasonableness of a particular defendant's conduct has been materially influenced by external, concrete factors unique to her." *Id.* (emphasis added). Accordingly, under *Dixon II*, Mr. Thompson is entitled to introduce evidence of "external, concrete factors," such as a *physical* condition that prevented him from escaping or rendered him vulnerable to attack by his co-conspirators, and to have the jury consider those factors in determining whether "his perceptions and actions [were] reasonable." *Id.* But *Dixon II* provides no support for his request to modify the pattern instruction to include an additional provision directing the jury to consider whether "a person in the defendant's situation would have been unable to resist."

Indeed, adding this language would be ill-advised for two reasons. First, as written, the instruction already directs the jury to consider whether resisting was a "reasonable, legal alternative" for this defendant in order to avoid an "unlawful and present, imminent and impending threat . . . of death or serious bodily injury." *See id*. Accordingly, the jury well might be perplexed as to how to interpret and apply the proposed additional language, which is duplicative of but not identical to the other existing elements of the instruction and thus would disrupt the logical coherence of the instruction. Second, the phrase "in the defendant's situation" is vague and overbroad and would improperly allow the jury to consider perception-altering "non-tangible psychological conditions," which *Dixon II* clearly prohibits. Accordingly, not only is Mr. Thompson's proposed modification unsupported by *Dixon II*, but it is also unlikely to assist the

9

jury in appropriately assessing Mr. Thompson's duress defense.

In further support of his reading of *Dixon II*, Mr. Thompson points to the Tenth Circuit's comment that, because "Ms. Dixon herself" advanced Pattern Instruction 1.36 "as the proper basis for her duress defense," she "failed to preserve any opportunity to argue for reversal under a duress-defense rubric other than the one that Pattern Instruction 1.36 defines." *Dixon II*, 901 F.3d at 1180, 1184. Mr. Thompson reads this language to suggest that, if Ms. Dixon had argued for her requested instruction – namely, an instruction that her actions be assessed from the perspective of a reasonable person in the same circumstances as hers – under another "analytical framework," such as the Model Penal Code, she might have prevailed. *Id.* at 1184. Taking this as an invitation, Mr. Thompson asks this Court to "expan[d] the pattern jury instruction, to be more consistent with the Model Penal Code." Doc. 296 at 4.

In *Dixon II*, the Court noted:

> At least the most salient federal decisions that have demonstrated a receptivity to arguments akin to Ms. Dixon's have relied in significant part on the linguistic formulation of the duress defense adopted by the Model Penal Code ("MPC"), which frames the inquiry as whether a defendant "was coerced" to commit the crime by the "use of, or a threat to use, unlawful force against his person or the person of another, that a person of reasonable firmness *in his situation* would have been unable to resist."

*Dixon II*, 901 F.3d at 1181 (emphasis added; citation omitted). The Court noted that "the linguistic formulation" of the Tenth Circuit's pattern instruction "is patently different from the MPC's and, perhaps most notably, does not include the MPC's 'in his situation' language, which appears to have been taken as an invitation to consider, in assessing the propriety of an asserted duress defense, evidence regarding a psychological disorder." *Id.* at 1182. "[G]iven this linguistic difference," the Court declined to "read our Pattern Instruction 1.36 as offering the same or similar invitation to consider evidence relating to [psychological] conditions." *Id.* To the contrary, the

10

Court restated its position that, under Pattern Instruction 1.36, "the legal propriety of a defendant's assessment of, and response to, the circumstances that allegedly have subjected her to duress is determined by applying an objective lens – a lens that is closed to Ms. Dixon's evidence that would ostensibly demonstrate the *subjectively distorting* impact of [her psychological conditions] on her ability to reasonably perceive the threat of harm and the legal alternatives to avoid it." *Id.* (emphasis in original).

Thus, whether because Ms. Dixon failed to preserve her right to argue for adoption of the MPC or otherwise, the *Dixon II* Court declined to either adopt the MPC's "in the defendant's situation" language or interpret its own pattern instruction to allow for consideration of a defendant's psychological conditions when determining the propriety of an asserted duress defense. As this Court "correctly find[s] itself bound by Circuit precedent," *Dixon I*, 548 U.S. at 5, it is not at liberty to do what the Tenth Circuit declined to do in *Dixon II*. In other words, in the face of *Dixon II*, this Court cannot contravene Tenth Circuit law by adopting the "in the defendant's situation" language from the MPC instruction. *See United States v. Redifer*, 631 F. App'x 548, 557-58 (10th Cir. 2015) (upholding denial of requested instruction that "contained an inaccurate statement of Tenth Circuit law"); *United States v. Starnes*, 109 F.3d 648, 651 (10th Cir. 1997) ("Lacking a reasonable factual or legal basis for the defense instruction, Starnes had no right to it."); *Kelley v. City of Albuquerque*, 542 F.3d 802, 819–20 (10th Cir. 2008) (district court did not err in refusing to give instruction where party failed to establish that "proposed instruction was [not] a proper exposition of Tenth Circuit law"). Thus, rather than providing a basis for this Court to instruct the jury to consider whether "a person in defendant's situation would have been able to resist," *Dixon II* in fact prohibits this Court from modifying the Tenth Circuit pattern instruction to include such a consideration.

## CONCLUSION

For the reasons set forth above, neither of Mr. Thompson's proposed modifications to the Tenth Circuit pattern instruction on duress comports with controlling law. Accordingly, the Court will not adopt either of those modifications and instead, if it ultimately instructs the jury on duress, it will use the Tenth Circuit pattern instruction, as written.

**IT IS THEREFORE ORDERED** that Defendant Karl Thompson's Proposed Amended Jury Instruction on Duress and Memorandum in Support of Proposed Amended Jury Instruction [Doc. 283] is **DENIED**.

DATED this 2nd day of July 2021.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE